(No. 48980.– )

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. JEFFREY LAMBRECHTS, Appellant.

*Opinion filed November 30, 1977.*

Ralph Ruebner, Deputy Defender, and Alan D. Goldberg, Assistant Defender, of Elgin, for appellant.

William J. Scott, Attorney General, of Springfield (Donald B. Mackay and Raymond McKoski, Assistant Attorneys General, of Chicago, of counsel), for the People.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

Defendant, Jeffrey Lambrechts, pleaded guilty in the circuit court of Du Page County to a one-count indictment charging him with burglary. The State recommended, as a part of its plea agreement with defendant, a sentence of 18 to 54 months' imprisonment. The court sentenced defendant to a term of 6 to 20 years. The Appellate Court for the Second District affirmed (41 Ill. App. 3d 729), and we allowed defendant's petition for leave to appeal.

The State and defendant apparently agree that defense counsel requested a pretrial conference with the trial judge to which the State objected because no tentative plea agreement had then been reached between the parties as contemplated by our Rule 402(d)(2) (58 Ill. 2d R. 402(d)(2)). The court apparently declined the requested conference but indicated defense counsel should continue his discussion with the State's Attorney, and that in 90-95% of the cases the judge followed the recommended dispositions. At the subsequent plea proceedings the court was informed that the State and defendant had arrived at a plea agreement, and the agreement was stated for the record. "[D]efendant will enter a plea of guilty to Indictment No. 74–838–G. The State will recommend that he be sentenced to serve 18 to 54 months concurrent with a one to three [year] sentence, which he has received

in Kane County." The indictment was read to defendant, and the court determined that he understood the nature of the charge against him. A detailed statement of the facts which were the basis for the plea was presented, and, after a minor correction, was conceded by defendant to be correct. Defendant expressly admitted he was guilty of the offense. The court informed defendant of the presumption of innocence, the reasonable doubt standard of proof, the right to a jury trial, and the right to confront and cross-examine witnesses. The defendant indicated that he understood that he was waiving all of these rights by pleading guilty, and that no promises other than the plea agreement and no threats had been made to him concerning his plea. The court continued to question defendant as follows:

"THE COURT: Do you realize that although your attorney and the State's Attorney and yourself, although you have discussed the penalty you would receive, and you have discussed the fact that you would get 18 months to 54 months if you pled guilty, do you realize that.I, the judge, have not been a party to that agreement, and I might decide to give you a different sentence; that I'm not bound by the agreement you have made with your lawyer and the State's Attorney? Do you understand that?

MR. LAMBRECHTS: (No answer.)

THE COURT: Answer orally.

MR. LAMBRECHTS: Yes.

THE COURT: Mr. Lambrechts, also, did anybody discuss with you what the penalty is for the crime of burglary?

MR. LAMBRECHTS: I think it's one to 20.

THE COURT: That's right. The penalty I can give you is at least one year in the penitentiary as a minimum and I can give you up to 20 years in the penitentiary with a mandatory three years parole and also fine you up to $10,000, or is it $15,000 now?

MR. HAYTON: [Assistant States Attorney]: $10,000.

THE COURT: Do you understand I can do that?

MR. LAMBRECHTS: Yes.

THE COURT: Because I am not bound by the agreement that your attorney and the State's Attorney have made.

When it comes to sentencing I could give you a sentence of one to 20, three to 20, six to 20, anything between a minimum of one year and a maximum of 20 years with a mandatory three years parole, even though you have gotten this agreement with the State.

Do you understand that?

MR. LAMBRECHTS: Yes.

THE COURT: All right. Did your attorney explain that to you?

MR. LAMBRECHTS: Yes.

THE COURT: And you understand that?

MR. LAMBRECHTS: Yes.

\* \* \*

THE COURT: I would like to ask you once more: do you still wish to plead guilty to the charge of burglary in indictment No. 74—838—G?

MR. LAMBRECHTS: Yes."

After finding defendant guilty of burglary, the court, apparently unfamiliar with defendant's past and noting the recommended minimum was greater than the lowest permissible minimum, ordered a presentence report.

That report detailed defendant's history, indicating he was a 26-year-old high school graduate (correspondence school diploma), married more than two years, and the father of a 2½-month-old daughter. The report also indicated defendant's wife was then "on probation in Cook County for a charge of Theft"; that defendant stated he had been hospitalized and treated several times since 1965 in connection with his usage of drugs, including psychological and psychiatric consultation, both public and private, and treatment at both public and private institutions, among them the Elgin State Hospital and the Federal Rehabilitation Center in Kentucky; that he had been an active member of the Methadone Maintenance

Institute in Chicago for the last 1½ years. As to his drug problem defendant told the court: "I wish I'd never started it [drugs]. They have screwed up my life. I have been off drugs for one year. My baby and my job are the most important things to me now." Defendant's extensive criminal record was noted, including one year's probation on a 1967 theft charge, reduced from burglary; 90 days in the House of Corrections in 1968 for contributing to the delinquency of a minor; a 1970 burglary charge which was reduced to theft, for which he received two years' probation including 30 days in jail; a grand theft charge shortly afterwards which was reduced to criminal trespass with one year's probation; 10 months in jail for theft of $150 in 1972; a 30-day jail sentence on a fictitious license plate charge; a 1973 burglary charge which was dropped when defendant pleaded guilty to possession of stolen property for which he received five years' probation and a sentence of one to three years for burglary in Kane County which would commence following the sentencing hearing in this case. Defendant said he had been offered a job just prior to the Kane County sentencing, paying $9.56 per hour, more than he had ever earned. Although he had held some six jobs since leaving school, he was unemployed at the time of the report.

The court thoroughly questioned Lambrechts at the sentencing hearing concerning each prior conviction. Defendant explained that he committed these offenses to finance his drug habit, but had had no drug problem for about a year. After defendant had been given an opportunity to offer evidence in mitigation the court stated in imposing sentence:

> "If I ever in my life saw a case where a record screamed for more than 18 to 54 months, this is it.
>
> You have shown you have been continually given probation, probation, probation, probation, and you have continually gone back to crime, crime, crime.

\* \* \*

THE COURT: It is my impression that from your record, and from the pre-sentence report that I have in front of me, that I cannot go along with the plea agreement.

I don't like to do that. In fact, it's the second time I have done it now in 2 weeks. I have not done it before, but I look at your record, and it's my job to make sure that society is protected, as well as the defendant, and based upon your record, I can see no alternative but to give you a much more severe penalty than the penalty agreed upon between you and the State."

The court then imposed the 6- to 20-year sentence which was protested by Lambrechts, who stated he was really innocent, claiming he pleaded guilty only because he expected the same sentence, and he wanted to get things over with. The court reminded him that he had previously admitted committing the crime and that the court had warned him it might not go along with the plea agreement. Defense counsel stated:

"My distinct impression was that by entering a plea there would be almost no question that the 18 to 54 —

THE COURT: You were here, too, when I gave the admonitions.

MR. EISEN: I was. They were the standard admonitions that I have heard in hundreds of cases, and I personally have never seen a variance from those.

The Court indicated in chambers that in 90, 95 per cent of the cases you follow the pre-trial recommendation.

THE COURT: Correct.

MR. EISEN: You certainly have never indicated any, to my knowledge—we had no prior forewarning of this \*\*\*."

The court refused to reconsider the sentence. In subsequently denying defendant's motion to withdraw his guilty plea, the judge further explained his decision not to accept the recommended sentence. He first commented on defendant's extensive criminal record and how "he had

sounded very flippant about beating the heroin problem."
Then the court said,

"As long as he told me he did the crime, he had a record like he did, I felt the penalty agreed upon was too low in his particular case. Now, I may be wrong. I may be right but that is the way I feel.

I'm here not only to protect the defendant's rights but the public's rights, too, and the public has as many rights as the defendant has, and I gave the defendant every opportunity to change his plea, withdraw his plea and told him I might not follow the negotiations. I told him that at least twice.

\* \* \*

It was my feeling that if I gave him a sentence of 18 months he would be out of jail in 18 months at least; that he would be back here in this courtroom within the year. That was my feeling.

It is based, I think, on pretty good substantial evidence. He has done it over, over, over and over and why suddenly is he going to not go out and commit burglary?

I don't know why I am supposed to think that suddenly he has reformed. His record didn't indicate it.

Everybody gave him a break along the line.

\* \* \*

It's just a continual forget it, forget it, forget it, and he is back in court three, four, five times and that is why.

It is the responsibility of us. We have to take that responsibility.

I can't say because you fellows agree it should be given that I am not even going to think about it because I do think about it.

\* \* \*

He tells me he is guilty over and over when I say do you want to withdraw your plea; you know I don't have to go along with it; you know I can give you a sentence of up to 20 years and he says, yes, yes, and he has an attorney.

\* \* \*

I read it [pre-sentence report] at home and thought about it. I didn't just look at it in five minutes and say six to 20.

I thought about it for the entire weekend, and I looked at his record. I verified with him on the record here that that was correct.

MR. EISEN: As to the—

THE COURT: I wanted to be sure that the convictions were correct, and I went over that thoroughly with him, because I wanted to make sure I wasn't taking information that wasn't accurate.

It wasn't something I did on the spur of the moment. I thought about it the entire weekend and then listened to his answers and made sure. I verified it, and I thought that was a fair sentence.

He may disagree. I am sure he would. I might, too, if I was a defendant.

I have to do my job and that's the way I saw it."

Defendant urges that due process considerations of basic fairness and decency required the trial court to allow defendant to withdraw his guilty plea after the court decided that the State's recommended sentence was unacceptably lenient. He also argues that the sentence actually imposed was grossly excessive.

Our Rule 402 (which is similar to section 3.3(a)(b) of the ABA Standards Relating to Pleas of Guilty (Approved Draft 1968)) sets out in detail the procedures applicable to guilty plea hearings and plea agreements:

"Rule 402. Pleas of Guilty

In hearings on pleas of guilty, there must be substantial compliance with the following:

(a) *Admonitions to Defendant.* The court shall not accept a plea of guilty without first, by addressing the defendant personally in open court, informing him of and determining that he understands the following:

(1) the nature of the charge;

(2) the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences;

(3) that the defendant has the right to plead not guilty, or to persist in that plea if it has already been made, or to plead guilty; and

(4) that if he pleads guilty there will not be a trial of any kind, so that by pleading guilty he waives the right to a trial by jury and the right to be confronted with the witnesses against him.

(b) *Determining Whether the Plea is Voluntary.* The court shall not accept a plea of guilty without first determining that the plea is voluntary. If the tendered plea is the result of a plea agreement, the agreement shall be stated in open court. The court, by questioning the defendant personally in open court, shall confirm the terms of the plea agreement, or that there is no agreement, and shall determine whether any force or threats or any promises, apart from a plea agreement, were used to obtain the plea.

(c) *Determining Factual Basis for Plea.* The court shall not enter final judgment on a plea of guilty without first determining that there is a factual basis for the plea.

(d) *Plea Discussions and Agreements.* When there is a plea discussion or plea agreement, the following provisions, in addition to the preceding paragraphs of this rule, shall apply:

(1) The trial judge shall not initiate plea discussions.

(2) If a tentative plea agreement has been reached by the parties which contemplates entry of a plea of guilty in the expectation that a specified sentence will be imposed or that other charges before the court will be dismissed, the trial judge may permit, upon request of the parties, the disclosure to him of the tentative agreement and the reasons therefor in advance of the tender of the plea. At the same time he may also receive, with the consent of the defendant, evidence in aggravation or mitigation. The judge may then indicate to the parties whether he will concur in the proposed disposition; and if he has not yet received evidence in aggravation or mitigation, he may indicate that his concurrence is conditional on that evidence being consistent with the representations made to him. If he has indicated his concurrence or conditional concurrence, he shall so state in open court at the time the agreement is stated as required by paragraph (b) of this rule. If the

defendant thereupon pleads guilty, but the trial judge later withdraws his concurrence or conditional concurrence, he shall so advise the parties and then call upon the defendant either to affirm or to withdraw his plea of guilty. If the defendant thereupon withdraws his plea, the trial judge shall recuse himself.

(3) If the parties have not sought or the trial judge has declined to give his concurrence or conditional concurrence to a plea agreement, he shall inform the defendant in open court at the time the agreement is stated as required by paragraph (b) of this rule that the court is not bound by the plea agreement, and that if the defendant persists in his plea the disposition may be different from that contemplated by the plea agreement." 58 Ill. 2d R. 402.

The essence of defendant's argument is that trial counsel was told by the judge that the judge followed the recommendations contained in plea agreements 90-95% of the time; that it later became apparent that this was only the second case in a total of some 50 in which the trial judge had deviated from recommended dispositions by imposing a more severe sentence than that recommended, although he had on several occasions deviated by imposing less severe sentences; that these facts coupled with the judge's statement at the time of ordering the presentence report that he was doing so because the recommended minimum exceeded the lowest permissible minimum, constituted a reasonable basis for the belief of defense counsel and defendant that a greater than recommended sentence would not be imposed. Since, arguably, a reasonable basis existed upon which to base his belief that the plea agreement was acceptable, defendant urges his plea became involuntarily and unintelligently made when his expectations as to sentence did not materialize, and that considering these circumstances, the trial court's failure to afford defendant an opportunity to withdraw his

plea before imposing the substantially more severe sentence is so manifestly unfair as to constitute a denial of due process. This argument completely ignores, however, the fact that at the point a tentative plea agreement was reached Rule 402(d)(2) provided a method whereby the concurrence or conditional concurrence of the trial judge in the plea agreement might have been sought prior to the entry of a plea. The judge was, of course, under no obligation to concur, but, if he did concur and subsequently changed his mind, defendant would have been entitled under Rule 402(d)(2) to withdraw his plea if he chose to do so and be tried before a different judge. And, if the judge refused to concur in the agreement, and defendant still pleaded guilty, he could scarcely claim surprise at a more severe sentence. Defendant, however, chose not to utilize this procedure. The record discloses no request for a conference, or for the judge to indicate his concurrence as permitted by the rule, after the plea agreement was reached. Having waived the procedure whereby the acceptability to the judge of the plea agreement could have been determined before entering his plea, it is inappropriate for defendant to now characterize the trial judge's conduct as an unconscionable "bait and switch" procedure, implying a deliberate scheme to lure defendant into a guilty plea agreement and then impose a substantially greater penalty.

Absent a plea agreement concurred in by the court, a defendant has no right, constitutional or otherwise, to know in advance the specific sentence which will be imposed upon him. (ABA Standards, Pleas of Guilty, sec. 3.3(b), commentary.) Nor is there any obligation upon a judge to follow the recommendations embodied in a plea agreement in which he has not concurred (58 Ill. 2d R. 402(d)(2), (3); ABA Standards, Pleas of Guilty, sec. 3.3(c)), although, if he does not concur, he must inform the defendant in open court at the time the terms of the

agreement are stated that the agreement is not binding on the judge and that the disposition of the case may be different from that proposed in the plea agreement. (58 Ill. 2d R. 402(d)(3).) The purpose of that admonition is to eliminate the possibility that the defendant might infer from the judge's awareness of the agreement that the judge has concurred therein. As we earlier noted, the trial judge did so inform defendant, and, in our judgment, made unmistakeably clear that he was not bound by the plea agreement and that defendant might be sentenced to a substantially longer term of imprisonment including specific reference to the 6- to 20-year sentence actually imposed. Nevertheless, defendant still contends that his expectations were permissible inferences, and clearly implies that the court's admonitions were only a perfunctory, ritualistic formality to which a defendant need pay scant attention. This characterization of the proceedings is completely inaccurate. The judge carefully and repeatedly warned Lambrechts that the court was not bound by the plea agreement and questioned him thoroughly in determining that he understood the consequences of pleading guilty. Defendant repeatedly said he understood them and reiterated his desire to plead guilty. There is, in our judgment, simply no basis upon which to hold that defendant's guilty plea was not properly accepted. This court has repeatedly held that a defendant is not entitled to withdraw his guilty plea simply because he is dissatisfied with the sentence imposed (*People v. Schmidt* (1957), 10 Ill. 2d 221, 229; *People v. King* (1953), 1 Ill. 2d 496, 500), and has also refused to permit a defendant to withdraw his guilty plea because the sentencing court did not follow the prosecutor's recommendation (*People v. Baldridge* (1960), 19 Ill. 2d 616, 622).

In our opinion the fact that defendant and his counsel did not utilize the available means of ascertaining the acceptability of the plea agreement and received a sub-

stantially more severe sentence than anticipated does not mean that defendant has been denied due process. It does mean that he and his lawyer made an error in judgment in appraising the likelihood of the recommended sentence being accepted by the judge. But unless that error was induced by the State or by the judge's conduct, defendant is not entitled to relief. Obviously the judge's reference to following recommendations "in 90-95% of the cases" indicated the court usually accepted plea agreements. But equally obvious, in our opinion, was the fact that in up to 10% of the cases the court did not "go along." It is significant in considering the circumstances here that at the time that statement, which is emphasized by defendant as misleading, was made, no plea agreement existed, nor did the judge have knowledge of defendant's past record. It does not seem to us unusual that a judge, viewing that record, would be concerned as to whether society's best interests were being served by the lenient treatment received by defendant in connection with his eight prior convictions, and would believe something more substantial than the recommended sentence was appropriate. We add that the implications of defendant's argument that a defendant can, with impunity, disregard or discount the judge's admonition that an unconcurred in plea agreement is not binding upon the court, and that the penalty imposed by the judge may be more severe than agreed to by counsel and defendant, simply do not merit discussion. The principal purpose of Rule 402 was to remove the aura of secrecy from plea agreements so that their details would be recorded and clearly understood. To imply that a defendant need not seriously consider the judge's admonitions regarding an agreement is to impugn the integrity of the safeguards which the rule creates.

We understand the disappointment felt by a defendant who receives a sentence as severe as this after pleading guilty. Undoubtedly it was not expected. But that fact

does not entitle him to withdraw his guilty plea. This court's comments in *People v. Baldridge* (1960), 19 Ill. 2d 616, 622, are applicable:

"[W]hen it is considered that the court, prior to the time the plea of guilty was entered and accepted, expressly advised defendant it would not necessarily be bound by such recommendation, it can hardly be said that defendant was the victim of misrepresentation, misleading inducement or improper conduct. What does appear, rather, is that defendant, with full understanding and the advice of his counsel, took a calculated risk that the punishment meted out by the court might be less severe than he would receive upon a trial before a jury. That the punishment imposed was not what he hoped or believed it would be affords no basis for defendant to repudiate his own acts and agreements, or to impute improper motives to the State's Attorney. In light of defendant's full understanding of the consequences of his plea, and his knowledge that the court was not bound by the recommendation, no denial of due process may be said to have occurred."

The remaining issue is whether defendant's sentence was excessive, for we do have discretionary authority to reduce such sentence (58 Ill. 2d R. 615(b)(4)). But because of the trial court's superior position from which to determine an appropriate disposition, we are reluctant to reduce sentences which are within the statutory limitations and not clearly at variance with the purpose and spirit of the Constitution. (*People v. McCullough* (1970), 45 Ill. 2d 305, 310; *People v. Hampton* (1969), 44 Ill. 2d 41, 48; *People v. Richardson* (1969), 43 Ill. 2d 318, 321-22; *People v. Taylor* (1965), 33 Ill. 2d 417, 424.) A 6- to 20-year sentence is within the statutory limits for burglary

(Ill. Rev. Stat. 1973, ch. 38, pars. 19—1(b), 1005—8—1(b)(3)), and the trial judge's comments in denying the motion to withdraw the plea make evident the fact that he did not arrive at his conclusion easily or arbitrarily. Defendant relies on his attempts to rid himself of his drug addiction, the reason for his prior offenses, and his family and work situation as factors indicating a good rehabilitation potential. Opposed to that are the repeated failures on his part to achieve rehabilitation despite the frequent admission to probation and treatment for his drug problem. The trial judge's comments suggest that defendant's demeanor reflected negatively on his sincerity. While the presence of a wife and baby might ordinarily be thought to provide some assurance of additional effort by defendant to rehabilitate himself, we note his arrest for a burglary only a few months prior to the sentencing hearing in this case, even though he allegedly had experienced no drug problems for about a year, he apparently had a job, and his wife was pregnant. While we might not have imposed the same sentence as did the trial judge had the initial decision been ours, the record indicates a conscientious and reasoned consideration by him of the sentencing question, one of the most difficult problems trial judges face. We cannot say on this record that the sentence he imposed was excessive.

Accordingly, we affirm the judgments of the appellate and circuit courts.

*Judgments affirmed.*

MR. JUSTICE MORAN took no part in the consideration or decision of this case.

MR. CHIEF JUSTICE WARD, dissenting:

As the majority in its recital of the involved circumstances states, the trial court denied the request of defense counsel for a pretrial conference after the prosecutor had

objected because no tentative plea agreement had been reached. The trial court also indicated that the defendant's attorney should continue his discussion with the prosecutor, obviously so that an agreement might be negotiated. The court added that in 90-95% of the cases the disposition recommended was adopted by the court. In the light of this I consider that the remarks to the defendant's attorney could be interpreted as an encouragement to reach a plea agreement. In their context the remarks well might have lulled the defendant into an unfounded sense of security that a plea agreement, which the court appeared to be encouraging, would be acceptable. The court's statement in this matter of grave importance to the accused was indiscreet. I do not believe its suggestive effect was erased by the formal admonition.

MR. JUSTICE DOOLEY, also dissenting:

This is another incident in the long list of injustices resulting from improper judicial interference in the plea-bargaining process.

The realities of the situation must be recognized. The court encouraged defendant's counsel to participate in plea-bargaining discussion with the State's Attorney. The court went so far as to state that in "90-95%" of the cases he followed the recommended disposition. To the average man this was in effect a representation that he always followed what was recommended.

An agreement to serve 18 to 54 months was reached between the People and defendant's counsel in consideration for defendant's waiver of substantial rights. True, the court, prior to sentencing, went through the ritual of admonition required by law. That the defendant regarded this as a mere, formality is obvious from his failure to respond until directed to do so by the court.

After stating "I don't like to do that" and "I have not done it before," referring to rejecting the plea agreement,

the court gave the defendant 6 to 20 years—almost five times the penalty under discussion.

There exists a great gulf between the relative position of the court and the defendant entering a plea of guilty. This in itself is a compelling reason why the court's conduct must be above reproach. Certainly, defendant and his counsel had a right to assume the judge was a gentleman of his word. No doubt, his representation induced the plea of guilty. The Chief Justice's description of the conduct of the court is more than charitable, when he calls it "indiscreet." We agree this was error of such magnitude as to taint the subsequent proceedings.

Simple justice dictates the reversal of this judgment and sentence, with directions that defendant be given leave to withdraw his plea of guilty and that the cause be assigned to a different judge.