THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
NATHANIEL GRANT, Defendant-Appellant.

First District (1st Division)   No. 78-104

Opinion filed March 26, 1979.—Rehearing denied April 9, 1979.

Ralph Ruebner and Gary Jay Ravitz, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, James S. Veldman, and Gerald E. Nora, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

The defendant, Nathaniel Grant, was charged by information with the offense of armed robbery. (Ill. Rev. Stat. 1977, ch. 38, par. 18—2.) After a bench trial, defendant was found guilty and was sentenced by the trial court to the Illinois Department of Corrections for a period of not less than 5 nor more than 15 years. Defendant appeals, contending that in sentencing him the trial court failed to comply with the presentence report provisions of the Unified Code of Corrections (Ill. Rev. Stat. 1977, ch. 38, pars. 1005—3—1 *et seq.*) and that the court abused its discretion by considering certain information, contained in the presentence report, as aggravating evidence without first determining its factual accuracy.

The complainant, Carrie Mathews, testified that while on her way to work at 4:45 a.m. on March 18, 1977, she stood at the intersection of 83rd and South Cottage Grove in Chicago, waiting for a traffic light to change so that she could cross to her bus stop. At this time, the complaining witness carried a purse which contained her wallet, $6, identification and credit cards, eyeglasses and pink "Puff" paper tissues. The complaining witness further testified that at this time the streets were illuminated by neon lights. After a short time, the complainant observed defendant crossing Cottage Grove Avenue from the right. He then approached the complainant on the corner and told her to "give it up." The complainant looked at defendant and, after seeing what appeared to be a gun in his hand, began to walk away. Defendant then came after her and started pulling on her purse. When this was unsuccessful, defendant fired a shot in the air. At this point, the complainant realized that defendant was carrying a real gun and, because of this, gave her purse to him.

Defendant took the complainant's purse and ran into a lighted alley off 83rd Street, between Cottage Grove and Maryland Avenues. The

complaining witness followed him to see if she could retrieve her purse. Defendant paused by a gangway leading to Maryland Avenue, fired two shots at the complaint, but missed. Defendant then fled into the gangway. The complaining witness followed him but lost sight of defendant and returned to the alley where she shouted for the police. After an unspecified period, two uniformed police officers arrived on the scene. The complaining witness described the offender to the officers, accompanied them around the neighborhood, and after several minutes, she pointed out defendant to them. The complainant then observed the two officers arrest defendant and take a gun from him. The complainant further stated that defendant, when arrested, had a pink tissue stuffed in his waistband. Lastly, the complaining witness testified that the police officers returned some identification cards to her which had been inside the purse. However, the purse, itself, was never returned. She stated that she did not know where the aforementioned items were recovered.

Officer Philip Kulak testified that he was one of the officers flagged down by the complaining witness on the date in question. Kulak further testified that he observed other black male pedestrians in the area, but stated that the complaining witness pointed out only defendant. Kulak arrested defendant as he walked past the squad car. When searched, the police officer discovered a .38-caliber revolver containing four expended shells and two live rounds in defendant's waistband. Additionally, there was a pink "Kleenex" in defendant's waistband. Officer Kulak also seized $13 from defendant but stated that he did not recover any personal identification or a wallet belonging to the complaining witness. Officer Kulak conceded that the complainant's purse was never recovered and that upon arrest defendant told him that he was a security guard.

It was stipulated that the revolver, which was seized from defendant upon his arrest, was listed as being owned by the A-Alert Security Agency of Chicago.

Defendant testified in his own behalf and stated that he had worked the night before the robbery as an armed A-Alert security guard at a Jewel Food Store. He further stated that he left work at midnight and went to a friend's house, which was located at 9019 South Clyde Avenue. Defendant stayed at this location until 3 or 4 o'clock in the morning at which time he returned to his home at 9120 South Dauphin Avenue. At 83rd and Cottage Grove, defendant testified that he saw a thief snatch the complaining witness' purse. Defendant claimed that he fired one shot in the air with a service revolver and then gave chase, but lost the offender in an alley gangway. He also stated that the other three expended shells in his revolver had been fired a month earlier at a gun shop.

Defendant conceded that he did not hail the police when they drove

by him on the street. Defendant also denied having any pink tissue paper when arrested.

In rebuttal, the prosecution entered a stipulation to the effect that the owner of the A-Alert Security Agency, if called to testify, would state that defendant had been assigned to guard the New Halsted Motel on the night and morning of March 17-18, but had failed to report to work.

After hearing this evidence, the trial court found defendant guilty of armed robbery. Approximately two weeks later, a hearing in aggravation and mitigation was held. At the outset of this hearing, the trial court indicated that a presentence investigation report had been filed with the court on that date and that both the prosecution and defense counsel had been provided with a copy of such report. Defense counsel then indicated that he was ready to proceed with the hearing. The 11-page presentence report indicated that defendant had received a one-year probation for trespass to a vehicle in June 1973 which was terminated successfully and was on two years probation for theft at the time of his arrest in this matter; that defendant worked at a shoe store full time for one year and periodically over the past four years; and that he suffered a bullet wound in February 1976. The circumstances of the wound were not noted. In aggravation, the prosecution argued that defendant "has a background involving violation of the law, * * *" and also pointed out that the defendant used a dangerous weapon in committing the armed robbery. The prosecution then requested a greater than minimum sentence so that the Department of Corrections would have some leeway in determining when defendant was fit to be returned to society. In mitigation, defense counsel argued that this was defendant's first felony conviction and his only act of violence. Defense counsel also pointed out that defendant was only 21 years old and then requested a minimum sentence of 4 years to 4 years and one day. Defendant then expressed a desire to be rehabilitated.

After hearing these arguments, the trial court noted defendant's adult probation record and indicated that the reporting probation officer overlooked a one-year conditional discharge for unlawful use of weapons in January 1975. With respect to defendant's bullet wound, the court stated: "In 1976 you received a bullet wound, and I am sure that was not while you were in church or any other worthwhile place." Regarding defendant's job at the shoe store, the court concluded: "You evidently had employment there or could have had employment and you didn't care for employment."

The court then went on to state:

"* * * But what you did here is what is plagueing [*sic*] the court. This is the worst kind of crime. This is what all the citizens are fearful of. This is why people and citizens across the country don't

go out in the evening, men on the street with gun [*sic*], men like you.

There is a lot of hoopla in the newspapers about organized crime and other kinds of crime. Most citizens couldn't find organized crime if they spent a year looking for it. But assault on the street with deadly weapon, that is the crime that has the whole country in fear. This is the worst kind of crime.

And this woman here, the complainant in this case, was a woman on her way to work, I believe, in the very early morning hours. She was so shocked by the assault that she tried desperately to hold on to her purse, because in this day and age people need whatever little money they have to get by. And you were taking it by force of a gun and other physical force. And you fired three shots from this gun.

This was a very terroristic thing that was done in connection with this woman, a woman much like your mother who is here in court today. And I am sure you would have been incensed if anything like this happened to your mother out on the streets by herself early in the morning. This is the kind of crime, Mr. Grant, that must be dealt with severely."

After making this statement, the trial court imposed the sentence of 5 to 15 years to the Illinois Department of Corrections.

Defendant argues that the fact that his presentence report was filed with the court on the day of the sentencing hearing indicates that defense counsel was deprived of the statutory 3-day period when the report must be made available for his inspection. For this reason, he contends that he was prejudiced. We do not agree with this contention.

■■ The Unified Code of Corrections requires that:

"(b) Presentence reports shall be open for inspection only as follows:

(1) * * *

(2) to the state's attorney and the defendant's attorney at least 3 days prior to the imposition of sentence, unless such 3 day requirement is waived;

* * *"

(Ill. Rev. Stat. 1977, ch. 38, par. 1005—3—4(b).)

However, this statute does not require that the report be tendered to the defendant or to his attorney. As was stated by this court in *People v. McGee* (1977), 49 Ill. App. 3d 523, 527, 364 N.E.2d 546:

"* * * It requires only that the report be open for inspection, which suggests that defendant or his attorney make a request to inspect it. Thus, the only basis for objection to a consideration of the report would be that it was not made available for inspection,

as provided in the statute. As no such objection was made here when the report was tendered, it was properly received and considered by the trial court. * * *"

See also *People v. Lambrechts* (1976), 41 Ill. App. 3d 729, 737, 355 N.E.2d 53, *aff'd* (1977), 69 Ill. 2d 544, 372 N.E.2d 641.

Although the presentence report was filed on the day of defendant's sentencing hearing, we have been unable to find, after a careful review of the record on appeal, any indication that it was previously unavailable to defense counsel. On the contrary, defendant's attorney indicated familiarity with the presentence report and, in fact, based his argument in mitigation on it, requesting the minimum sentence on the basis that defendant's prior record showed no felony arrests or a history of violence. Defense counsel also stated that he was satisfied with the court's knowledge of the presentence report.

■■ On appeal, defendant's primary contention seems to be that the prejudice resulting to him from his late inspection of the report was that he was unable to present full mitigation to the court at the time of sentencing. However, here, as in *McGee* and *Lambrechts*, neither defendant nor his attorney complained at the hearing that they had not had sufficient time to inspect the presentence report. Additionally, defendant has not shown us what further mitigation he could have presented had he had the opportunity to inspect the presentence report 3 days prior to the hearing or what information in the report was not already known to him. In view of this and the fact that the trial court was under no obligation to give the report to defense counsel, we are of the opinion that defense counsel's actions serve to waive the 3-day requirement mandated by the statute.

Nor do we feel that defendant's cited authority, *People v. Hemphill* (1978), 62 Ill. App. 3d 977, 379 N.E.2d 1284, is applicable to the present situation. In *Hemphill*, the presentence report was never filed of record, and therefore, was not available to the appellate court, as required by section 5—3—4(b)(3). (Ill. Rev. Stat. 1977, ch. 38, par. 1005—3—4(b)(3).) Consequently, it was impossible for the reviewing court to ascertain with certainty the origin of the report, when it was prepared or what it contained. Since the trial court had failed to meet any of its obligations under the aforementioned statute, the appellate court vacated defendant's sentences and remanded the cause for a new sentencing hearing. Here, the presentence report was made of record.

■■ Defendant further contends that he was prejudiced by the trial court's negative conclusions regarding a gunshot wound of unknown origin and his employment record. We agree that these comments were improper since it is evident that the trial court failed to first determine the factual accuracy of such information. (See *People v. Crews* (1967), 38

Ill. 2d 331, 337, 231 N.E.2d 451.) However, in view of the other factors hereinafter set forth, it is clear that consideration of the bullet wound did not prejudice defendant.

■ Defendant further argues that the trial court improperly sentenced him to more than the statutory minimum sentence for armed robbery. In support of this argument, defendant calls attention to the fact that the trial judge indicated that it was his personal opinion that armed robbery is the worst crime. In *People v. Perruquet* (1977), 68 Ill. 2d 149, 156, 368 N.E.2d 882, the Illinois Supreme Court declared that, absent an abuse of discretion, a reviewing court may not alter a sentence. The Unified Code of Corrections provides that the penalty for armed robbery, a Class 1 felony (Ill. Rev. Stat. 1977, ch. 38, par. 18—2(b)), shall be imprisonment for a minimum term of 4 years, "unless the court, having regard to the nature and circumstances of the offense and the history and character of the defendant, sets a higher minimum term; * * *." (Ill. Rev. Stat. 1977, ch. 38, par. 1005—8—1(c)(2).) After having carefully examined the trial judge's conclusions concerning defendant's crime, we must conclude that his remarks followed an assessment of defendant's background. That background included a sporadic work record, one conditional discharge for unlawful use of weapons and convictions for criminal trespass to a vehicle and theft. The trial judge also assessed defendant's crime, pointing out that he fired a handgun at his victim, a defenseless woman, after she had surrendered her purse to him. In view of these facts, we cannot conclude that the trial court abused its discretion in sentencing defendant to the Illinois Department of Corrections for 5 to 15 years.

■ Although defendant is relatively young, and, as defense counsel pointed out, this was his only act of violence, such considerations will not be determinative where a crime is particularly brutal or senseless. In *People v. Hall* (1971), 1 Ill. App. 3d 792, 797, 275 N.E.2d 453, defendant, who had no prior criminal record, was sentenced to a term of 5 to 10 years for armed robbery. The court concluded that the sentence was warranted because the crime was committed at gunpoint. Here, defendant fired one shot in the air before gaining possession of the complaining witness' purse. When the complainant attempted to follow him while he was fleeing the scene, defendant fired two shots at her. Under such circumstances, we feel that the aforementioned sentence was appropriate and proper.

As stated previously, defendant contends that the trial court improperly described armed robbery as the most serious crime. However, an examination of the trial judge's conclusions regarding defendant's crime reveals that his remarks followed an assessment of the factual situation before him. It is apparent that the trial court was not saying that armed robbery was worse than murder, as defendant

suggests, but that violent, senseless street crime against defenseless citizens, which terrorizes the entire country, is the worst kind of crime. The judgment of the circuit court of Cook County is affirmed.

Affirmed.

GOLDBERG, P. J., and McGLOON, J., concur.