NO. 4-96-0230

                          IN THE APPELLATE COURT

                                OF ILLINOIS

                              FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS,    )    Appeal from

          Plaintiff-Appellee,           )    Circuit Court of

          v.                            )    Sangamon County

WILLIAM M. BUTCHER,                     )    No. 94CF569

          Defendant-Appellant.          )

                                        )    Honorable

                                        )    Thomas R. Appleton,

                                        )    Judge Presiding.

                                     

          JUSTICE GREEN delivered the opinion of the court:

          This case concerns the admonitions a circuit court must

give a defendant before accepting an admission by the defendant

that the allegations of a petition seeking to revoke the probation

previously granted that defendant are true.  We are also concerned

with defendants raising the issue of error in that regard for the

first time on appeal.  We recognize that the admonitions need not

be as extensive as those required under Supreme Court Rule 402(a)

(134 Ill. 2d R. 402(a)) upon acceptance of a plea of guilty.  See

People v. Beard, 59 Ill. 2d 220, 226-27, 319 N.E.2d 745, 748

(1974).  However, under the circumstances shown by the record here,

we conclude that the admonitions were insufficient to provide due

process, and the issue was properly raised for the first time on

appeal.

          On February 10, 1995, defendant, William Butcher, entered

a plea of guilty in the circuit court of Sangamon County to the

offense of felony theft (720 ILCS 5/16-1(a)(2) (West 1994)).  On

April 7, 1995, that court sentenced defendant to 30 months'

probation.  After one petition to revoke probation was withdrawn,

a second petition to revoke was filed on January 31, 1996.  After

a hearing on March 8, 1996, where defendant admitted the

allegations of the second petition, the circuit court revoked the

probation and on March 22, 1996, sentenced defendant to four years'

imprisonment with credit for time served.  Defendant has appealed. 

We reverse and remand with directions to permit defendant to

withdraw his admission of grounds to revoke.

          The problem presented here arises from the proceedings on

March 8, 1996.  At that time, defense counsel informed the circuit

court that defendant was going to admit the allegations of the

second petition and "we have an agreement as far as the sentence to

propose to the Court."  The court responded, "[w]hat is that?" 

Defense counsel then explained that defendant would be sentenced to

two years' imprisonment with credit for time served.  The court

then proceeded as follows:

               "THE COURT:  All right.  The Court will

          accept -- Well, before I do that, Mr. Butcher,

          do you understand you have a right to a

          hearing on the issue of whether or not you

          violated your probation?

               A. [Defendant]:  Yes, sir.

               THE COURT:  And you understand that the

          People would have the burden of proving by a

          preponderance of the evidence that you in fact

          violated your probation?

               A.  Yes, sir.

               THE COURT:  You are willing to waive that

          right?

               A.  Yes, I am."

          The court then stated it would "accept that admission"

but would "not accept the proposed negotiation of the parties" and

set the matter for sentencing.  The court likely concluded the

agreement between the State and the defendant was that upon

defendant's admission of the probation violation, the State would

recommend to the trial court the sentence be two years.  However, 

the language used was ambiguous as to whether defendant was being

promised a two-year sentence if he admitted the probation

violation.  We hold that under these circumstances the trial court

was under a duty to inquire as to what was the nature of the

promise by the State.

          Both the Supreme Court of Illinois and this court have

protected defendants subject to petitions to revoke probation from

promises the State made to obtain admissions of conduct that are

grounds for revocation.  In People v. Pier, 51 Ill. 2d 96, 99-100,

281 N.E.2d 289, 291 (1972), the court held that if such a defendant

admits a violation of probation "in reliance upon an unfulfilled

promise by the State's Attorney," such an admission is "not

voluntary."  In Beard (59 Ill. 2d at 223-25, 319 N.E.2d at 746-47),

that court receded from the broad language of Pier and indicated

Pier should not be considered beyond the factual situation it

presented.  However, in upholding an order revoking a probation,

the Beard court pointed out that no contention was made that such

a prosecution promise to the defendant had not been fulfilled.  The

Beard court also recognized that due process requires some

admonition before admission of probation violations can be

considered.

          In People v. Followell, 165 Ill. App. 3d 28, 31, 518

N.E.2d 706, 707-08 (1987), this court reversed an order revoking a

defendant's probation after the defendant had admitted the

allegations of the petition to revoke.  Our ruling was based upon

the failure of the trial court to properly admonish the defendant. 

We agreed that under Beard not all Rule 402(a) admonitions were

required but held that a required admonition was to inquire whether

the admission of the misconduct charged was based upon a promise. 

In People v. Foehrer, 197 Ill. App. 3d 754, 757-58, 555 N.E.2d 58,

60 (1990), this court upheld a revocation of probation based upon

the defendant's admission, even though the trial court's

admonitions did not include inquiring as to whether any promises

had been made to the defendant.  Nevertheless, we noted there that

no contention was made of any promises having been made to the

defendant.  Here, the likelihood of a misunderstanding as to

whether the defendant was being promised a two-year sentence was

patent on the face of the record.  Proper admonishment could easily

have avoided any misunderstanding.

          Further confusion occurred at sentencing.  Nothing was

said there about any agreement that defendant would receive only a

two-year sentence, but the prosecutor did state that the

prosecution was "still" asking that the sentence be for only two

years.  After the court imposed sentence, it explained to the

defendant that he had a right to appeal that would require him to

move to vacate his admission, and if that motion was denied, he

would then have 30 days to appeal the order denying that motion. 

The court then asked defendant if he understood his right to appeal

and defendant responded "[n]ot really."  We are unaware of any case

requiring a defendant who has admitted violating his probation to

file a motion to vacate or withdraw his admission before he can

appeal the order revoking the probation.

          The court then asked defendant if he wanted to appeal,

and defense counsel questioned whether the court was sentencing

defendant to four years' imprisonment despite the agreement the

defendant had with the prosecution in regard to two years.  The

court stated that was so.  Defense counsel stated they did want to

appeal and the court ordered the filing of a notice of appeal,

despite the admonition given that the filing of a motion to

withdraw the admission of a probation violation and obtaining a

ruling on that request would be a condition of a valid appeal.

          The State does not request that the appeal be dismissed

because of the lack of an appealable order due to the failure of

the defendant to move to withdraw his admission.  Rather, the State

calls attention to People v. Gazelle, 165 Ill. 2d 93, 649 N.E.2d

381 (1995), where the Supreme Court of Illinois upheld the

revocation of a defendant's probation based on the defendant's

admission of the grounds, even though in accepting the admission

the circuit court had given an inaccurate admonition as to whether

the defendant was subject to consecutive sentences.  The supreme

court reasoned that violation of that defendant's probation was

shown by the record of the commission of other offenses and sending

the matter back to allow withdrawal of the admission of violation

would be a waste of time because the violation could be proved and

the sentence would be the same.  Gazelle, 165 Ill. 2d at 95, 649

N.E.2d at 382.

          Here, as no evidence was presented, we cannot say that

the violation of the probation was proved as a matter of record and

that defendant would receive the same sentence on remand although

that may be the case.  We are concerned with the fact that the

issue of improper admonition was never raised in the circuit court. 

Defense counsel could have moved to withdraw the admission in the

trial court and put on evidence to show that defendant was misled

by the discussion of an agreement and thought he would receive only

two years' imprisonment if he admitted the allegations of the

petition to revoke probation.  However, neither in Beard, 

Followell, nor Foehrer was any mention made of the defendant having

raised the issue of improper admonishment in the trial court. 

Moreover, in cases where pleas of guilty have been set aside

because of inadequate admonishments, failure to raise the issue in

the trial court has not waived the issue for appeal.  People v.

Davis, 145 Ill. 2d 240, 250, 582 N.E.2d 714, 719 (1991); see also

People v. Sutherland, 128 Ill. App. 3d 415, 417-18, 470 N.E.2d

1210, 1213 (1984).

          Accordingly, we conclude that (1) the issue of inadequate

admonishment is properly before us, and (2) the circuit judge could

have and should have explained to the defendant that he had no

assurance in receiving only a two-year sentence and that failure

was reversible error.  As indicated, we reverse the order revoking

probation and remand with directions to the circuit court of

Sangamon County for a rehearing on the petition to revoke

probation.

          Reversed and remanded with directions.

          KNECHT, J., concurs.

          STEIGMANN, P.J., specially concurs. 

          PRESIDING JUSTICE STEIGMANN, specially concurring:

          Although I concur fully in the result reached and the

reasoning underlying it, I specially concur because the circum-

stances of this case demonstrate the need for a fundamental--but

simple--change in Illinois law:  when a defendant has pleaded

guilty (or, as in this case, admitted to allegations contained in

a petition to revoke his probation) pursuant to a plea agreement

that a specific sentence will be imposed and the trial court

chooses not to impose that sentence, then the court must give the

defendant an absolute right upon his request to withdraw his guilty

plea or admission.  

          The present case shows the need for this new rule.  At

the March 8, 1996, hearing, defendant's lawyer informed the trial

court that he had reached a plea agreement with the State and

defendant would be admitting to the allegations of the petition to

revoke his probation.  In response to the court's question as to

what the agreement was, counsel explained that defendant would be

sentenced to two years in prison with credit for time served. 

Shortly thereafter, after asking defendant a few questions, the

court stated that it would accept his admission but would not

accept the agreement the parties had reached regarding sentencing. 

          I emphasize that the trial court committed no error in

rejecting the plea agreement.  Sentencing remains a judicial

function, and courts are not required to accept plea agreements. 

(Although I hasten to add that--in my judgment--trial courts should

reject very few plea agreements.  Courts should be aware that they

do not possess the information available to the prosecutor and

defense counsel regarding either the respective strengths of their

cases or the credibility of their witnesses.)  However, once the 

court determined that it was not going to accept the plea agree-

ment, then Illinois law should have required it to state the

following to defendant:  

               "Mr. [defendant], I am now informing you

          that the agreement your attorney reached with

          the prosecutor regarding a sentence to be

          imposed in this case is an agreement I am not

          willing to go along with.  Therefore, I am

          going to let you withdraw your [(guilty plea)

          (admission to the petition to revoke your

          probation)] and I will place you in exactly

          the same position you were in before you came

          into court today and [(pleaded guilty) (ad-

          mitted to the petition to revoke your proba-

          tion)].  If you do not withdraw your [(guilty

          plea) (admission)] at this time, then I will

          accept it and proceed to sentence you to any

          sentence I believe appropriate under the law."

The court should then offer defendant the opportunity to consult

with his counsel before defendant decides what action to take in

view of the court's remarks.  

          Handling guilty pleas in this fashion provides several

advantages not only to the parties, but also to the criminal

justice system as a whole.  First, the process of plea bargaining--

which disposes of at least 80% of all criminal charges--is

strengthened by giving it increased certainty.  Courts have finally

realized that plea bargaining is really no different than negotia-

tions leading up to any other contract.  People v. Evans, 174 Ill.

2d 320, 326, 673 N.E.2d 244, 247 (1996) ("Although plea agreements

exist in the criminal justice structure, they are governed to some

extent by contract law principles"); People v. Wendt, 283 Ill. App.

3d 947, 952, 670 N.E.2d 1230, 1234 (1996) ("a negotiated guilty

plea is really a *** contract[] between the defendant and the

State," and "[p]lea bargains are in many ways subject to contract

principles").  Just as any business lawyer wants to avoid uncer-

tainties or contingencies in a contract he drafted for his client,

so too should the criminal defense attorney and prosecutor want to

avoid uncertainties and contingencies.  

          Clearly, the biggest uncertainty is whether the judge

will go along with the plea agreement--the ultimate contract--that

the parties reach.  The procedure I propose gives the parties

absolute certainty regarding the outcome of the agreement they

reach--namely, that one of two things will happen:  (1) the trial

court will accept it fully, or (2) the court will state its

unwillingness to accept it and give the defendant the opportunity

to withdraw his guilty plea, which defendant may do without having

lost anything in the process.  

          Second, this proposed procedure empowers defendants. 

Under current law, a defendant pleading guilty receives no

guarantee that the trial court will go along with the plea

agreement.  Instead, such a defendant, frequently distrustful of

"the system" to begin with, is encouraged by his lawyer to plead

guilty, sometimes with the assurance that the trial court in 90% to

95% of the cases will follow the plea agreement.  Such assurances

are frequently greeted with skepticism and--regrettably (as

explained below)--appropriately so.  Under the procedure I propose,

defendants will no longer have to rely upon such assurances at

their peril.  

          Third, this procedure would strengthen the criminal

justice system by eliminating the obvious injustice done to a

defendant who pleads guilty pursuant to a plea agreement and then

receives a sentence greater than he bargained for.  Such events,

even if rare, damage the standing of the courts not only with

criminal defendants, but also in the eyes of any fair-minded

person.  

          Further, this new procedure would eliminate the need for

Supreme Court Rule 402(d)(3) (134 Ill. 2d R. 402(d)(3)), which

provides that when the trial court has not given its concurrence or

conditional concurrence to a plea agreement being stated in open

court at the time a defendant pleads guilty, the court shall inform

defendant that it is not bound by the agreement and that if the

defendant persists in his plea, the court may sentence him

differently from that contemplated by the plea agreement.  The time

currently taken to so advise a defendant pleading guilty would be

eliminated because no possibility would exist that the trial court

would not go along with the plea agreement without giving the

defendant the opportunity to withdraw the guilty plea.  Given the

thousands of guilty pleas that can occur in just one year in a busy

criminal courtroom in this State, this savings of time should not

be discounted.   

          Last, but perhaps most important, this new procedure

would strengthen the criminal justice system because counsel for

the parties would no longer need to "conference" the case with the

trial judge under Rule 402(d)(2) (134 Ill. 2d R. 402(d)(2)). 

Counsel now feel compelled to do so (with those judges who permit

it) in order to get some indication of whether the judge will go

along with a tentative plea agreement the parties have reached.   

          Although trial courts are always admonished--and

appropriately so--to avoid the appearance of impropriety, "co-

nferencing" guilty pleas violates that admonition and looks just

plain awful to those outside the criminal justice system.  It also

wastes a lot of time.  Further, conferencing provides trial courts

so disposed an opportunity to abuse the plea bargaining process by

becoming active participants in it (and even initiating it, despite

the prohibition contained in Supreme Court Rule 402(d)(1) (134 Ill.

2d R. 402(d)(1))), including making none-too-veiled threats to both

parties regarding the consequences of rejecting the court's view of

an appropriate plea agreement.  None of this could happen under the

proposed procedure because the trial court would not have any role

in the plea bargaining process.  

          The system proposed here is not revolutionary.  Its

utilization currently lies within the discretion of any trial judge

in this state, and it is a system which I personally employed while

serving 12½ years as a trial judge.  

          In closing, I refer to People v. Lambrechts, 69 Ill. 2d

544, 372 N.E.2d 641 (1977), where the defendant pleaded guilty to

burglary pursuant to a plea agreement that he would be sentenced to

18 to 54 months in prison.  The trial court had earlier declined to

"conference" the case "but indicated defense counsel should

continue his discussion with the State's Attorney, and that in 90-

95% of the cases the judge followed the recommended dispositions." 

Lambrechts, 69 Ill. 2d at 547, 372 N.E.2d at 643.  When the

defendant pleaded guilty, the court discussed the plea agreement

the parties had reached and then said the following:  "'[D]o you

realize that I, the judge, have not been a party to that agreement,

and I might decide to give you a different sentence; that I'm not

bound by the agreement you have made with your lawyer and the

State's Attorney?  Do you understand that?'"  Lambrechts, 69 Ill.

2d at 548, 372 N.E.2d at 643.  The court then ordered a presentence

investigation conducted, and after considering the presentence

report, sentenced defendant to 6 to 20 years in prison.  Defense

counsel stated that his "'distinct impression was that by entering

a plea[,] there would be almost no question that the 18 to 54

[months sentence would be imposed].'"  Lambrechts, 69 Ill. 2d at

551, 372 N.E.2d at 645.  Counsel also stated that the court's

admonitions were the standard ones he had "'heard in hundreds of

cases, and I personally have never seen a variance from those.'" 

Lambrechts, 69 Ill. 2d at 551, 372 N.E.2d at 645.  When counsel

pointed out to the court that it had indicated in chambers that it

follows sentencing recommendations of the parties in "'90 [to] 95

percent of the cases,'" the court's response was, "'[c]orrect.'" 

Lambrechts, 69 Ill. 2d at 551, 372 N.E.2d at 645.  Nonetheless, the

court denied defendant's subsequent motions to withdraw his guilty

plea or reconsider the sentence.  

          When the defendant's appeal reached the supreme court, he

argued that "due process considerations of basic fairness and

decency required the trial court to allow [him] to withdraw his

guilty plea after the court decided that the State's recommended

sentence was unacceptably lenient."  Lambrechts, 69 Ill. 2d at 553,

372 N.E.2d at 646.  However, after analyzing Rule 402, the supreme

court concluded that no error occurred.  In so holding, the supreme

court noted that the record before it disclosed no request by

defendant for a Rule 402(d)(2) "conference," whereby the trial

court might have indicated its concurrence, as permitted by that

rule, after the plea agreement was reached.  The supreme court held

that defendant had "waived the procedure whereby the acceptability

to the judge of the plea agreement could have been determined

before entering his plea."  Lambrechts, 69 Ill. 2d at 556, 372

N.E.2d at 647.  (Note, however, that even if defendant had so

requested, the trial court was not obligated to "conference" the

case.)  The supreme court concluded as follows:  "We understand the

disappointment felt by a defendant who receives a sentence as

severe as this after pleading guilty.  Undoubtedly it was not

expected.  But that fact does not entitle him to withdraw his

guilty plea."  Lambrechts, 69 Ill. 2d at 558-59, 372 N.E.2d at 649. 

          Justices Ward and Dooley dissented.  Justice Ward wrote: 

          "[i]n their context the [trial court's] re-

          marks well might have lulled the defendant

          into an unfounded sense of security that a

          plea agreement, which the court appeared to be

          encouraging, would be acceptable.  The court's

          statement in this matter of grave importance

          to the accused was indiscreet.  I do not

          believe its suggestive effect was erased by

          the formal admonition."  Lambrechts, 69 Ill.

          2d at 561, 372 N.E.2d at 650 (Ward, C.J.,

          dissenting).  

          Justice Dooley wrote the following:  

               "This is another incident in the long

          list of injustices resulting from improper

          judicial interference in the plea-bargaining

          process.

               ***

               An agreement to serve 18 to 54 months was

          reached between the People and defendant's

          counsel in consideration for defendant's

          waiver of substantial rights.  True, the

          court, prior to sentencing, went through the

          ritual of admonition required by law.  [It is

          obvious that] the defendant regarded this as a

          mere formality ***.

               ***

               There exists a great gulf between the

          relative position of the court and the defen-

          dant entering a plea of guilty.  This in

          itself is a compelling reason why the court's

          conduct must be above reproach.  Certainly,

          defendant and his counsel had a right to as-

          sume the judge was a gentlemen of his word. 

          No doubt, his representation induced the plea

          of guilty."  Lambrechts, 69 Ill. 2d at 561-62,

          372 N.E.2d at 650 (Dooley, J., dissenting).  

          For the reasons eloquently stated by Justice Dooley, I

have always believed that Lambrechts constituted an injustice to

the defendant in that case.  The very fact that the provisions of

Rule 402 (134 Ill. 2d R. 402) permit injustices like this to occur

graphically demonstrates that rule must be changed.  The very case

on appeal now before us reveals that the problem in Lambrechts

continues unabated and will do so until the supreme court requires

trial courts who decline to go along with plea agreements to tender

to defendants the opportunity to withdraw their guilty pleas. 

Simple justice demands no less.