THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIAM M. BUTCHER, Defendant-Appellant.

Fourth District    No. 4—96—0230

Argued April 15, 1997.—Opinion filed May 8, 1997.

STEIGMANN, P.J., specially concurring.

Daniel D. Yuhas and Duane E. Schuster (argued), both of State Appellate Defender's Office, of Springfield, for appellant.

Patrick W. Kelley, State's Attorney, of Springfield (Norbert J. Goetten, Robert J. Biderman, and Allan F. Lolie, Jr. (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GREEN delivered the opinion of the court:

This case concerns the admonitions a circuit court must give a defendant before accepting an admission by the defendant that the allegations of a petition seeking to revoke the probation previously granted that defendant are true. We are also concerned with defendants raising the issue of error in that regard for the first time on appeal. We recognize that the admonitions need not be as extensive as those required under Supreme Court Rule 402(a) (134 Ill. 2d R. 402(a)) upon acceptance of a plea of guilty. See *People v. Beard*, 59 Ill. 2d 220, 226-27, 319 N.E.2d 745, 748 (1974). However,

under the circumstances shown by the record here, we conclude that the admonitions were insufficient to provide due process, and the issue was properly raised for the first time on appeal.

On February 10, 1995, defendant, William Butcher, entered a plea of guilty in the circuit court of Sangamon County to the offense of felony theft (720 ILCS 5/16—1(a)(2) (West 1994)). On April 7, 1995, that court sentenced defendant to 30 months' probation. After one petition to revoke probation was withdrawn, a second petition to revoke was filed on January 31, 1996. After a hearing on March 8, 1996, where defendant admitted the allegations of the second petition, the circuit court revoked the probation and on March 22, 1996, sentenced defendant to four years' imprisonment with credit for time served. Defendant has appealed. We reverse and remand with directions to permit defendant to withdraw his admission of grounds to revoke.

The problem presented here arises from the proceedings on March 8, 1996. At that time, defense counsel informed the circuit court that defendant was going to admit the allegations of the second petition and "we have an agreement as far as the sentence to propose to the Court." The court responded, "[w]hat is that?" Defense counsel then explained that defendant would be sentenced to two years' imprisonment with credit for time served. The court then proceeded as follows:

"THE COURT: All right. The Court will accept—Well, before I do that, Mr. Butcher, do you understand you have a right to a hearing on the issue of whether or not you violated your probation?

A. [Defendant]: Yes, sir.

THE COURT: And you understand that the People would have the burden of proving by a preponderance of the evidence that you in fact violated your probation?

A. Yes, sir.

THE COURT: You are willing to waive that right?

A. Yes, I am."

The court then stated it would "accept that admission" but would "not accept the proposed negotiation of the parties" and set the matter for sentencing. The court likely concluded the agreement between the State and the defendant was that upon defendant's admission of the probation violation, the State would recommend to the trial court the sentence be two years. However, the language used was ambiguous as to whether defendant was being promised a two-year sentence if he admitted the probation violation. We hold that under these circumstances the trial court was under a duty to inquire as to what was the nature of the promise by the State.

■ Both the Supreme Court of Illinois and this court have protected defendants subject to petitions to revoke probation from promises the State made to obtain admissions of conduct that are grounds for revocation. In *People v. Pier*, 51 Ill. 2d 96, 99-100, 281 N.E.2d 289, 291 (1972), the court held that if such a defendant admits a violation of probation "in reliance upon an unfulfilled promise by the State's Attorney," such an admission is "not voluntary." In *Beard* (59 Ill. 2d at 223-25, 319 N.E.2d at 746-47), that court receded from the broad language of *Pier* and indicated *Pier* should not be considered beyond the factual situation it presented. However, in upholding an order revoking a probation, the *Beard* court pointed out that no contention was made that such a prosecution promise to the defendant had not been fulfilled. The *Beard* court also recognized that due process requires some admonition before admission of probation violations can be considered.

In *People v. Followell*, 165 Ill. App. 3d 28, 31, 518 N.E.2d 706, 707-08 (1987), this court reversed an order revoking a defendant's probation after the defendant had admitted the allegations of the petition to revoke. Our ruling was based upon the failure of the trial court to properly admonish the defendant. We agreed that under *Beard* not all Rule 402(a) admonitions were required but held that a required admonition was to inquire whether the admission of the misconduct charged was based upon a promise. In *People v. Foehrer*, 197 Ill. App. 3d 754, 757-58, 555 N.E.2d 58, 60 (1990), this court upheld a revocation of probation based upon the defendant's admission, even though the trial court's admonitions did not include inquiring as to whether any promises had been made to the defendant. Nevertheless, we noted there that no contention was made of any promises having been made to the defendant. Here, the likelihood of a misunderstanding as to whether the defendant was being promised a two-year sentence was patent on the face of the record. Proper admonishment could easily have avoided any misunderstanding.

Further confusion occurred at sentencing. Nothing was said there about any agreement that defendant would receive only a two-year sentence, but the prosecutor did state that the prosecution was "still" asking that the sentence be for only two years. After the court imposed sentence, it explained to the defendant that he had a right to appeal that would require him to move to vacate his admission, and if that motion was denied, he would then have 30 days to appeal the order denying that motion. The court then asked defendant if he understood his right to appeal and defendant responded "[n]ot really." We are unaware of any case requiring a defendant who has admitted violating his probation to file a motion to vacate or

withdraw his admission before he can appeal the order revoking the probation.

The court then asked defendant if he wanted to appeal, and defense counsel questioned whether the court was sentencing defendant to four years' imprisonment despite the agreement the defendant had with the prosecution in regard to two years. The court stated that was so. Defense counsel stated they did want to appeal and the court ordered the filing of a notice of appeal, despite the admonition given that the filing of a motion to withdraw the admission of a probation violation and obtaining a ruling on that request would be a condition of a valid appeal.

The State does not request that the appeal be dismissed because of the lack of an appealable order due to the failure of the defendant to move to withdraw his admission. Rather, the State calls attention to *People v. Gazelle*, 165 Ill. 2d 93, 649 N.E.2d 381 (1995), where the Supreme Court of Illinois upheld the revocation of a defendant's probation based on the defendant's admission of the grounds, even though in accepting the admission the circuit court had given an inaccurate admonition as to whether the defendant was subject to consecutive sentences. The supreme court reasoned that violation of that defendant's probation was shown by the record of the commission of other offenses and sending the matter back to allow withdrawal of the admission of violation would be a waste of time because the violation could be proved and the sentence would be the same. *Gazelle*, 165 Ill. 2d at 95, 649 N.E.2d at 382.

■ Here, as no evidence was presented, we cannot say that the violation of the probation was proved as a matter of record and that defendant would receive the same sentence on remand although that may be the case. We are concerned with the fact that the issue of improper admonition was never raised in the circuit court. Defense counsel could have moved to withdraw the admission in the trial court and put on evidence to show that defendant was misled by the discussion of an agreement and thought he would receive only two years' imprisonment if he admitted the allegations of the petition to revoke probation. However, neither in *Beard, Followell,* nor *Foehrer* was any mention made of the defendant having raised the issue of improper admonishment in the trial court. Moreover, in cases where pleas of guilty have been set aside because of inadequate admonishments, failure to raise the issue in the trial court has not waived the issue for appeal. *People v. Davis*, 145 Ill. 2d 240, 250, 582 N.E.2d 714, 719 (1991); see also *People v. Sutherland*, 128 Ill. App. 3d 415, 417-18, 470 N.E.2d 1210, 1213 (1984).

Accordingly, we conclude that (1) the issue of inadequate

admonishment is properly before us, and (2) the circuit judge could have and should have explained to the defendant that he had no assurance in receiving only a two-year sentence and that failure was reversible error. As indicated, we reverse the order revoking probation and remand with directions to the circuit court of Sangamon County for a rehearing on the petition to revoke probation.

Reversed and remanded with directions.

KNECHT, J., concurs.

PRESIDING JUSTICE STEIGMANN, specially concurring:
Although I concur fully in the result reached and the reasoning underlying it, I specially concur because the circumstances of this case demonstrate the need for a fundamental—but simple—change in Illinois law: when a defendant has pleaded guilty (or, as in this case, admitted to allegations contained in a petition to revoke his probation) pursuant to a plea agreement that a specific sentence will be imposed and the trial court chooses not to impose that sentence, then the court must give the defendant an absolute right upon his request to withdraw his guilty plea or admission.

The present case shows the need for this new rule. At the March 8, 1996, hearing, defendant's lawyer informed the trial court that he had reached a plea agreement with the State and defendant would be admitting to the allegations of the petition to revoke his probation. In response to the court's question as to what the agreement was, counsel explained that defendant would be sentenced to two years in prison with credit for time served. Shortly thereafter, after asking defendant a few questions, the court stated that it would accept his admission but would not accept the agreement the parties had reached regarding sentencing.

I emphasize that the trial court committed no error in rejecting the plea agreement. Sentencing remains a judicial function, and courts are not required to accept plea agreements. (Although I hasten to add that—in my judgment—trial courts should reject very few plea agreements. Courts should be aware that they do not possess the information available to the prosecutor and defense counsel regarding either the respective strengths of their cases or the credibility of their witnesses.) However, once the court determined that it was not going to accept the plea agreement, then Illinois law should have required it to state the following to defendant:

> "Mr. [defendant], I am now informing you that the agreement
> your attorney reached with the prosecutor regarding a sentence

to be imposed in this case is an agreement I am not willing to go along with. Therefore, I am going to let you withdraw your [(guilty plea) (admission to the petition to revoke your probation)] and I will place you in exactly the same position you were in before you came into court today and [(pleaded guilty) (admitted to the petition to revoke your probation)]. If you do not withdraw your [(guilty plea) (admission)] at this time, then I will accept it and proceed to sentence you to any sentence I believe appropriate under the law."

The court should then offer defendant the opportunity to consult with his counsel before defendant decides what action to take in view of the court's remarks.

Handling guilty pleas in this fashion provides several advantages not only to the parties, but also to the criminal justice system as a whole. First, the process of plea bargaining—which disposes of at least 80% of all criminal charges—is strengthened by giving it increased certainty. Courts have finally realized that plea bargaining is really no different than negotiations leading up to any other contract. *People v. Evans*, 174 Ill. 2d 320, 326, 673 N.E.2d 244, 247 (1996) ("Although plea agreements exist in the criminal justice structure, they are governed to some extent by contract law principles"); *People v. Wendt*, 283 Ill. App. 3d 947, 952, 670 N.E.2d 1230, 1234 (1996) ("a negotiated guilty plea is really a *** contract[ ] between the defendant and the State," and "[p]lea bargains are in many ways subject to contract principles"). Just as any business lawyer wants to avoid uncertainties or contingencies in a contract he drafted for his client, so too should the criminal defense attorney and prosecutor want to avoid uncertainties and contingencies.

Clearly, the biggest uncertainty is whether the judge will go along with the plea agreement—the ultimate contract—that the parties reach. The procedure I propose gives the parties *absolute certainty* regarding the outcome of the agreement they reach—namely, that one of two things will happen: (1) the trial court will accept it fully, or (2) the court will state its unwillingness to accept it and give the defendant the opportunity to withdraw his guilty plea, which defendant may do without having lost anything in the process.

Second, this proposed procedure empowers defendants. Under current law, a defendant pleading guilty receives no guarantee that the trial court will go along with the plea agreement. Instead, such a defendant, frequently distrustful of "the system" to begin with, is encouraged by his lawyer to plead guilty, sometimes with the assurance that the trial court in 90% to 95% of the cases will follow the plea agreement. Such assurances are frequently greeted with skepti-

cism and—regrettably (as explained below)—appropriately so. Under the procedure I propose, defendants will no longer have to rely upon such assurances at their peril.

Third, this procedure would strengthen the criminal justice system by eliminating the obvious injustice done to a defendant who pleads guilty pursuant to a plea agreement and then receives a sentence greater than he bargained for. Such events, even if rare, damage the standing of the courts not only with criminal defendants, but also in the eyes of any fair-minded person.

Further, this new procedure would eliminate the need for Supreme Court Rule 402(d)(3) (134 Ill. 2d R. 402(d)(3)), which provides that when the trial court has not given its concurrence or conditional concurrence to a plea agreement being stated in open court at the time a defendant pleads guilty, the court shall inform defendant that it is not bound by the agreement and that if the defendant persists in his plea, the court may sentence him differently from that contemplated by the plea agreement. The time currently taken to so advise a defendant pleading guilty would be eliminated because no possibility would exist that the trial court would not go along with the plea agreement without giving the defendant the opportunity to withdraw the guilty plea. Given the thousands of guilty pleas that can occur in just one year in a busy criminal courtroom in this state, this savings of time should not be discounted.

Last, but perhaps most important, this new procedure would strengthen the criminal justice system because counsel for the parties would no longer need to "conference" the case with the trial judge under Rule 402(d)(2) (134 Ill. 2d R. 402(d)(2)). Counsel now feel compelled to do so (with those judges who permit it) in order to get some indication of whether the judge will go along with a tentative plea agreement the parties have reached.

Although trial courts are always admonished—and appropriately so—to avoid the appearance of impropriety, "conferencing" guilty pleas violates that admonition and looks just plain awful to those outside the criminal justice system. It also wastes a lot of time. Further, conferencing provides trial courts so disposed an opportunity to abuse the plea bargaining process by becoming active participants in it (and even initiating it, despite the prohibition contained in Supreme Court Rule 402(d)(1) (134 Ill. 2d R. 402(d)(1))), including making none-too-veiled threats to both parties regarding the consequences of rejecting the court's view of an appropriate plea agreement. None of this could happen under the proposed procedure because the trial court would not have any role in the plea bargaining process.

The system proposed here is not revolutionary. Its utilization currently lies within the discretion of any trial judge in this state, and it is a system which I personally employed while serving $12^{1}/_{2}$ years as a trial judge.

In closing, I refer to *People v. Lambrechts*, 69 Ill. 2d 544, 372 N.E.2d 641 (1977), where the defendant pleaded guilty to burglary pursuant to a plea agreement that he would be sentenced to 18 to 54 months in prison. The trial court had earlier declined to "conference" the case "but indicated defense counsel should continue his discussion with the State's Attorney, and that in 90-95% of the cases the judge followed the recommended dispositions." *Lambrechts*, 69 Ill. 2d at 547, 372 N.E.2d at 643. When the defendant pleaded guilty, the court discussed the plea agreement the parties had reached and then said the following: " '[D]o you realize that I, the judge, have not been a party to that agreement, and I might decide to give you a different sentence; that I'm not bound by the agreement you have made with your lawyer and the State's Attorney? Do you understand that?' " *Lambrechts*, 69 Ill. 2d at 548, 372 N.E.2d at 643. The court then ordered a presentence investigation conducted, and after considering the presentence report, sentenced defendant to 6 to 20 years in prison. Defense counsel stated that his " 'distinct impression was that by entering a plea[,] there would be almost no question that the 18[-] to 54[-month sentence would be imposed].' " *Lambrechts*, 69 Ill. 2d at 551, 372 N.E.2d at 645. Counsel also stated that the court's admonitions were the standard ones he had " 'heard in hundreds of cases, and I personally have never seen a variance from those.' " *Lambrechts*, 69 Ill. 2d at 551, 372 N.E.2d at 645. When counsel pointed out to the court that it had indicated in chambers that it follows sentencing recommendations of the parties in " '90 [to] 95 percent of the cases,' " the court's response was, " '[c]orrect.' " *Lambrechts*, 69 Ill. 2d at 551, 372 N.E.2d at 645. Nonetheless, the court denied defendant's subsequent motions to withdraw his guilty plea or reconsider the sentence.

When the defendant's appeal reached the supreme court, he argued that "due process considerations of basic fairness and decency required the trial court to allow [him] to withdraw his guilty plea after the court decided that the State's recommended sentence was unacceptably lenient." *Lambrechts*, 69 Ill. 2d at 553, 372 N.E.2d at 646. However, after analyzing Rule 402, the supreme court concluded that no error occurred. In so holding, the supreme court noted that the record before it disclosed no request by defendant for a Rule 402(d)(2) "conference," whereby the trial court might have indicated its concurrence, as permitted by that rule, after the plea agreement

was reached. The supreme court held that defendant had "waived the procedure whereby the acceptability to the judge of the plea agreement could have been determined before entering his plea." *Lambrechts*, 69 Ill. 2d at 556, 372 N.E.2d at 647. (Note, however, that even if defendant had so requested, the trial court was not obligated to "conference" the case.) The supreme court concluded as follows: "We understand the disappointment felt by a defendant who receives a sentence as severe as this after pleading guilty. Undoubtedly it was not expected. But that fact does not entitle him to withdraw his guilty plea." *Lambrechts*, 69 Ill. 2d at 558-59, 372 N.E.2d at 649.

Justices Ward and Dooley dissented. Justice Ward wrote:

"In their context the [trial court's] remarks well might have lulled the defendant into an unfounded sense of security that a plea agreement, which the court appeared to be encouraging, would be acceptable. The court's statement in this matter of grave importance to the accused was indiscreet. I do not believe its suggestive effect was erased by the formal admonition." *Lambrechts*, 69 Ill. 2d at 561, 372 N.E.2d at 650 (Ward, C.J., dissenting).

Justice Dooley wrote the following:

"This is another incident in the long list of injustices resulting from improper judicial interference in the plea-bargaining process.

\*\*\*

An agreement to serve 18 to 54 months was reached between the People and defendant's counsel in consideration for defendant's waiver of substantial rights. True, the court, prior to sentencing, went through the ritual of admonition required by law. [It is obvious that] the defendant regarded this as a mere formality \*\*\*.

\*\*\*

There exists a great gulf between the relative position of the court and the defendant entering a plea of guilty. This in itself is a compelling reason why the court's conduct must be above reproach. Certainly, defendant and his counsel had a right to assume the judge was a gentleman of his word. No doubt, his representation induced the plea of guilty." *Lambrechts*, 69 Ill. 2d at 561-62, 372 N.E.2d at 650 (Dooley, J., dissenting).

For the reasons eloquently stated by Justice Dooley, I have always believed that *Lambrechts* constituted an injustice to the defendant in that case. The very fact that the provisions of Rule 402 (134 Ill. 2d R. 402) permit injustices like this to occur graphically demonstrates that rule must be changed. The very case on appeal now before us reveals that the problem in *Lambrechts* continues unabated and will do so until the supreme court requires trial courts that decline to go

along with plea agreements to tender to defendants the opportunity to withdraw their guilty pleas. Simple justice demands no less.