THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GREGORY A. McMANN, Defendant-Appellant.

Fourth District No. 4—98—0340

Opinion filed June 11, 1999.

Daniel D. Yuhas and Arden J. Lang, both of State Appellate Defender's Office, of Springfield, for appellant.

Patrick W. Kelley, State's Attorney, of Springfield (Norbert J. Goetten and Robert J. Biderman, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE COOK delivered the opinion of the court:

In November 1996, the State charged defendant, Gregory A. McMann, with stalking Diane S. Striplin for following and harassing her and, thereby, placing her in reasonable apprehension of future bodily harm. 720 ILCS 5/12—7.3(a)(2) (West 1996). In January 1997, defendant entered a negotiated plea of guilty to stalking Striplin and received two years' probation. As part of his probation, defendant was to have no contact with Striplin or her family. In December 1997, the State petitioned to revoke defendant's probation on a number of violations, including failure to pay fees and intoxication. The State then twice amended its petition to allege defendant battered Striplin in January 1998 in violation of his probation order. In February 1998, the trial court found by a preponderance of the evidence that defendant had battered Striplin and, therefore, revoked defendant's probation. In April 1998, the trial court resentenced defendant to three years' imprisonment and, the same month, denied defendant's motion to reconsider.

Defendant appeals, arguing that the trial court, by sentencing him to the maximum prison term permitted for stalking under the state statute, punished him for the conduct upon which his probation was revoked, rather than for the original offense. Defendant also argues the court was erroneously predisposed to impose a prison term upon defendant. We affirm.

## BACKGROUND

The conduct that formed the basis of the stalking charge to which defendant entered a guilty plea included defendant's (1) keeping Striplin under surveillance for two to three days and (2) once beating on Striplin's door, threatening to blow up her apartment building when she refused to let him in, and then breaking bottles on Striplin's patio floor when these threats failed to gain him entrance. As it sentenced defendant to probation, the trial court admonished him to take the terms of his probation seriously and stated as follows:

"Sir, I just want to emphasize to you the seriousness of proba-

tion. I asked you if you understood the terms of probation[,] and you said yes[,] and the reason is, because I want to make sure that you clearly understand these because if you violate any of these terms of probation the State's Attorney's Office can file a petition to revoke your probation. We'd then have a hearing on it[,] and if I find that you have violated your probation, I guarantee you, sir, you're going to be going to jail."

The court continued:

"I consider this to be a very serious matter[,] and I want to explain this to you because I don't want to send you to jail. I don't want to see you back in here again facing these charges, so I want to emphasize to you how serious I consider probation to be because I want you to clearly understand if you violate the terms you're going to jail and I don't want to do that."

Defendant replied that he understood these admonishments.

At the hearing to revoke defendant's probation, Striplin testified she let defendant in her apartment the evening of January 7, 1998, after he came to her door saying he wanted to talk. Defendant smelled strongly of alcohol and proceeded to take off his clothes for Striplin to wash, donning a towel to cover himself. Striplin repeatedly told defendant to leave. When he refused, Striplin went across the hall to her neighbor's apartment to call her landlord. Striplin then returned to her apartment, where defendant knocked her over a chair, kicked her in the side, and struck her in her face and chest repeatedly with his fist and open hand, leaving Striplin with a bloodied face and fractured foot. Striplin's landlord then arrived, and defendant threw on his soaking wet clothes and raced out the door.

Striplin testified on cross-examination that defendant, whom she briefly dated in high school, had harassed her, her ex-husband, her children, and her guests and friends for almost two decades by, among other things, driving by her home repeatedly, knocking on her door, breaking her windows, and battering her in front of her children. Striplin said she blamed defendant for her losing her children to the State and was extremely afraid of him.

Mary Atterberry, who lived across the hallway from Striplin, testified that on the night Striplin was attacked Atterberry was able to look through Striplin's partially opened apartment door and saw defendant accost Striplin after Striplin returned from using Atterberry's portable telephone to call the landlord. Atterberry heard Striplin screaming, saw Striplin fly through the air and over a recliner, and then saw defendant jump on top of Striplin. Defendant fled as soon as the landlord arrived, leaving Striplin with blood on her face, a swelling foot, and unable to walk.

John Vaughn, Striplin's landlord, said Striplin called him that evening and requested his immediate presence at her apartment. He raced up the stairs to Striplin's apartment after receiving a 9-1-1 message from his tenant on his pager and heard screaming and hollering as he approached Striplin's apartment. He heard Striplin yell, "Stop it, you're killing me, you're hurting me." When Vaughn got to the door of the apartment, he saw defendant on top of Striplin hitting her repeatedly and saw Striplin bleeding from the face with blood on her hands. Defendant fled the apartment after Vaughn ordered him to stop hitting Striplin. Vaughn raced after him, chasing him down the back steps of the apartment building and across the street, finally catching defendant near the apartment complex and holding him until police arrived.

Defendant, against the advice of counsel, testified on his own behalf. He claimed Striplin lost her children because of her own abuse and neglect of them but blamed him for her problems and, therefore, had made up the present allegations to get back at him. He denied entering Striplin's apartment building or her apartment the night of the attack and said he just happened to be in the area looking for a place to stay for an upcoming court hearing. Defendant denied ever seeing Vaughn before the hearing and was unable to clearly articulate why he was tackled and apprehended near Striplin's apartment building that night.

The presentencing report filed before defendant's sentencing hearing showed defendant had a "rap sheet" with offenses dating back to 1985, including unlawful use of a weapon, disorderly conduct, battery, assault, and criminal trespass to residence. The presentencing report quoted from a report made by a mental health professional assigned to counsel defendant following defendant's conviction for stalking that painted a dim portrait of defendant's rehabilitative potential. The mental health professional reporting to the presentencing officer described defendant as noncompliant and uninterested in treatment and said defendant had consistently denied responsibility for his crimes, claimed he had been framed, and had poor insight into his condition. The presentencing report concluded that rehabilitation had not occurred in defendant's case and another term of probation would not likely have any different effect on defendant's behavior.

During the sentencing hearing, the trial judge read from the mental health portion of this report to support his conclusion defendant still posed a serious risk to Striplin and should be incarcerated for the maximum amount of time possible for stalking under state statute, as requested by the State. The court stated:

"I think she's at risk. This has been going on for [10] years. This

defendant has been receiving counseling, denies that there is a problem, still continues to deny today that there's any problem. It's all her fault and none of this is his fault. I think this victim is very much at risk and because of this, I agree with [the State's] recommendation."

The court concluded:

"Based upon this situation, the fact that he was on probation when this happened, the defendant is sentenced to three years in the Department of Corrections ***."

This appeal followed.

## ANALYSIS

Defendant argues this court should vacate defendant's sentence and remand the cause for resentencing because (1) the trial court sentenced him to three years in prison for beating Striplin, rather than for stalking her, in violation of the general rule that a sentencing court may not impose a sentence designed to punish the defendant for the criminal activity that triggered the revocation of probation; and (2) the trial court was erroneously predisposed to give defendant a prison term, rather than probation. Defendant preserved neither argument for review as he failed to raise either objection at the sentencing hearing or include them in a postsentencing motion. 730 ILCS 5/5—8—1(c) (West 1996); *People v. Reed*, 177 Ill. 2d 389, 393, 686 N.E.2d 584, 586 (1997). However, defendant claims both matters are of such a magnitude as to constitute plain error under Supreme Court Rule 615(a) (134 Ill. 2d R. 615(a)).

 Sentencing issues may be reviewed as plain error where the issue is one of misapplication of the law, as the right to be sentenced lawfully is substantial and affects a defendant's fundamental right to liberty. *People v. Keene*, 296 Ill. App. 3d 183, 186, 693 N.E.2d 1273, 1275 (1998). A sentencing decision by the trial court will generally not be disturbed on appeal unless the trial court abuses its discretion. *People v. Thomas*, 178 Ill. 2d 215, 249, 687 N.E.2d 892, 907 (1997); *People v. Porter*, 285 Ill. App. 3d 50, 53, 676 N.E.2d 1, 3 (1996). A sentence imposed within statutory limits will not be overturned unless it is greatly at variance with the purpose and spirit of the law or is manifestly disproportionate to the nature of the offense. *Porter*, 285 Ill. App. 3d at 53, 676 N.E.2d at 3. When sentencing a defendant after revocation of probation, the trial court may consider the defendant's conduct while on probation, and criminal offenses committed by defendant while on probation may be considered in aggravation. *Porter*, 285 Ill. App. 3d at 53, 676 N.E.2d at 3. A sentence within the statutory range for the original offense will not be set aside on review unless the reviewing court is strongly persuaded that the sentence imposed after

revocation of probation was imposed as a penalty for the conduct that was the basis of revocation and not for the original offense. *People v. Young*, 138 Ill. App. 3d 130, 142, 485 N.E.2d 443, 450 (1985).

■ Defendant quotes the trial court's statement that it sentenced him to three years in prison "based on the situation" or, rather, because defendant was on probation when the battery occurred, to support his contention that the trial court had punished him for battering Striplin instead of for his original offense. Defendant's claim is without merit. This comment by the trial court, even out of context, does not indicate the court considered itself entitled to sentence or indeed did sentence defendant to the maximum sentence permitted by statute as punishment for the battering of Striplin alone. The court's entire commentary shows it sentenced defendant to this prison term because it believed his attack on Striplin while on probation for stalking reflected adversely on his rehabilitative potential, *i.e.*, defendant posed a serious threat to Striplin based on his abysmal criminal record, the characterization of defendant's psychological and rehabilitative progress as quite poor, defendant's unending harassment of Striplin for more than a decade, and the violent nature of defendant's latest attack on Striplin.

Moreover, the trial court had every right to consider the violent nature of defendant's probation violation in determining what sentence he would receive after his probation was revoked. In fact, any responsible court would consider defendant's brutal and injurious attack on Striplin not only a flagrant violation of his probation but gravely important in fashioning defendant's sentence for the original offense. Defendant's sentence is within the statutory limits and is not manifestly disproportionate to the nature of his original crime, stalking. This court is not at all persuaded that the sentence imposed after the revocation of defendant's probation was imposed as a penalty for his latest attack on Striplin rather than for his original offense against her.

Defendant also argues the trial court was erroneously predisposed to sentence defendant to prison given that it twice admonished defendant during defendant's original sentencing hearing that it would send him to prison if he violated his probation. Defendant cites two cases to support this contention. In *People v. Bolyard*, 61 Ill. 2d 583, 585-87, 338 N.E.2d 168, 169-70 (1975), the court remanded the defendant's cause for resentencing where the trial court would not even consider probation for a conviction of indecent liberties with a child. The court said the trial judge had arbitrarily denied probation because defendant fell within his category of disfavored offenders. *Bolyard*, 61 Ill. 2d at 587, 338 N.E.2d at 170. In *People v. Kendrick*,

104 Ill. App. 3d 426, 435-36, 432 N.E.2d 1054, 1061 (1982), the first district remanded the defendants' causes for resentencing, finding the trial judge was predisposed to sentence the defendants to prison on drug and conspiracy charges and had not considered the possibility of probation, as required by law. Both cases are distinguishable from the instant case.

In this case, defendant had already been given probation by the trial court during his original sentencing hearing. While sentencing defendant to probation for stalking Striplin, the trial court attempted to impress upon defendant the seriousness of his crimes and insure that defendant understood the trial court would not hesitate to impose a prison term upon defendant to protect his victim should defendant continue to harass Striplin in violation of the probation order. These remarks by the trial court are not analogous to those of the sentencing courts in the cases cited by defendant, nor do they suggest that the court unjustly predetermined that certain classes of crimes or individuals would not be considered for probation. Rather, the trial court was warning defendant he could not expect lenient treatment again should he flagrantly violate his probation. The trial court was acting within its authority to so inform defendant, and defendant's claims otherwise are without merit.

## CONCLUSION

For the foregoing reasons, we find the trial court did not violate defendant's rights or commit sentencing errors when sentencing defendant to three years in prison, and we reject his request to remand the cause for a new sentencing hearing.

Affirmed.

McCULLOUGH and GARMAN, JJ., concur.