10 March 2000

NO. 4-99-0302

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee,

v.

JOSEPH J. GOLEASH, JR.,

Defendant-Appellant.

)

)

)

)

)

)

)

)

Appeal from

Circuit Court of

McLean County

No. 95CF107

Honorable

John B. Huschen,

Judge Presiding.

_________________________________________________________________

JUSTICE STEIGMANN delivered the opinion of the court:

In July 1995, defendant, Joseph J. Goleash, Jr., pleaded guilty to deceptive practices (720 ILCS 5/17-1 (West 1994)) and received a probationary sentence.  In December 1998, the State filed a petition to revoke defendant's probation, alleging that he violated a criminal statute by driving a car while his license was revoked (DWR) (625 ILCS 5/6-303 (West Supp. 1997)).  Defendant admitted that he had done so, and the trial court scheduled a resentencing hearing for March 1999.  At that hearing, the court discharged defendant's probation but found him guilty of indirect criminal contempt and sentenced him to 120 days in jail for contempt.

Defendant appeals, arguing that (1) he did not violate the conditions of his probation because DWR is not a "criminal" offense and (2) the trial court erred by convicting and sentenc

ing him for indirect criminal contempt when (a) the only charging instrument against him was the State's petition to revoke proba

tion and (b) he did not receive proper admonitions under Supreme Court Rule 402(a) (177 Ill. 2d R. 402(a)) when he admitted his DWR.  We affirm in part and reverse in part.

I. BACKGROUND

After defendant pleaded guilty in July 1995 to decep

tive practices, the trial court sentenced him to 24 months' probation, to begin when his prison sentences from an unrelated case ended.  As a condition of his probation, he was not to violate "any criminal statute of any jurisdiction" (see 730 ILCS 5/5-6-3(a)(1) (West Supp. 1995)).  In November 1995, defendant began serving his probationary sentence.

In September 1997, while still on probation, defendant was arrested for driving under the influence of alcohol (DUI) (625 ILCS 5/11-501(a) (West Supp. 1997)).  In November 1997, the State filed a petition to revoke defendant's probation.  In February 1998, the trial court found defendant in violation of a condition of his probation and later extended his probation until January 1999.

In October 1998, defendant committed the offense of DWR (625 ILCS 5/6-303 (West Supp. 1997)).  In December 1998, the State filed a second petition to revoke defendant's probation based upon the October 1998 offense.  The State's petition concludes as follows:

"WHEREFORE, [p]etitioner[] pray[s] that the probation of the defendant *** be revoked and that defendant be sentenced under the original judg[]ment of the [c]ourt, or in the alternative for such other relief as the [c]ourt may deem just, including but not limited to the defendant being found in con

tempt of this court for wilfully violating the [c]ourt's probation order and the defen

dant being sentenced for such contempt."

In February 1999, defendant appeared for an arraignment on the State's petition and, through counsel, defendant offered to stipulate that he had committed the DWR.  However, defendant contended that DWR was not a "criminal" offense and, therefore, not a violation of the conditions of his probation.  The court then engaged in the following colloquy with defendant:

"THE COURT:  *** You understand, [defendant], you are not required to admit those two [
sic
] allegations?

DEFENDANT:  I do, your honor.

THE COURT:  You understand you can re

quire the State prove those allegations, and the burden of proof is proof by the prepon

derance of the evidence.

DEFENDANT:  Yes, I do.

THE COURT:  You understand that if you admit the allegations [and] the [c]ourt finds that this indeed was a violation of your probation, you would be resentenced on the charge of deceptive practices ***?

DEFENDANT:  *** It is my understanding that I will be able to have a hearing, and mitigating and aggravating evidence could be presented.

THE COURT:  That's correct."

After the State provided a factual basis, the court accepted defendant's admission and scheduled a resentencing hearing for March 1999.  Prior to that hearing, defendant filed a motion to dismiss the petition, setting forth his argument that DWR was not a "criminal" offense.

At the March 1999 hearing, the trial court denied defendant's motion to dismiss and then heard evidence and argu

ment regarding sentencing.  The court later discharged defen

dant's probation, held him in indirect criminal contempt, and sentenced him to 120 days in jail for contempt.  This appeal followed.

II. ANALYSIS

Defendant argues that the trial court erred by (1) denying his motion to dismiss the State's petition to revoke probation and (2) convicting and sentencing him to indirect criminal contempt when (a) the only charging instrument was the State's petition to revoke probation and (b) defendant did not receive proper admonitions under Supreme Court Rule 402(a) (177 Ill. 2d R. 402(a)) when he admitted to DWR.  We agree only with defendant's arguments regarding his contempt conviction.

A. Defendant's Motion To Dismiss

Defendant argues that the trial court erred by denying his motion to dismiss the State's petition.  Specifically, he contends that section 6-303 of the Illinois Vehicle Code (Vehicle Code) (625 ILCS 5/6-303 (West Supp. 1997)), which prohibits DWR, is not a "criminal" statute.  Therefore, violating section 6-303 does not constitute a violation of the conditions of his proba

tion.  Defendant's argument is based on the premise that a statute is "criminal" only if it is codified as part of the Criminal Code of 1961 (Criminal Code) (720 ILCS 5/1-1 
et
 
seq
.
 (West 1998)).  This premise is unsound.

Section 5-6-3(a)(1) of the Unified Code of Corrections (Corrections Code) (730 ILCS 5/5-6-3(a)(1) (West Supp. 1995)) requires that, as a condition of probation, a probationer must "not violate any criminal statute of any jurisdiction."  This broadly defined condition does not bar the probationer from violating only those statutes contained in the criminal code of any jurisdiction (including Illinois), but from violating "
any
 
criminal
 
statute
 of any jurisdiction" (emphasis added) (730 ILCS 5/5-6-3(a)(1) (West Supp. 1995)), and for good reason.  Different jurisdictions employ different systems of codification, and conduct proscribed under the "criminal code" in one jurisdiction might appear under a different location in the statutes of another.  The precise system any particular state chooses to use to codify statutes that prohibit criminal behavior is totally irrelevant to the 
Illinois statutory command
 (that defendant's order of probation merely copied) set forth in section 5-6-

3(a)(1) of the Corrections Code.  730 ILCS 5/5-6-3(a)(1) (West Supp. 1995)).   Accordingly, any analysis of whether a statute is "criminal" must focus on the following question:  Does the statute proscribe conduct for which a violator can be jailed?

DWR is normally a Class A misdemeanor (625 ILCS 5/6-

303(a) (West 1998)), carrying a possible sentence of incarcera

tion up to one year (730 ILCS 5/5-8-3(a)(1) (West 1998)).  Under certain circumstances, DWR becomes a Class 4 felony (625 ILCS 5/6-303(d) (West 1998)), for which a violator may be imprisoned for up to three years (730 ILCS 5/5-8-1(a)(7) (West 1998)).  We conclude that this statute is criminal in nature within the meaning of section 5-6-3(a)(1) of the Corrections Code and the order setting forth the conditions of probation at issue in this case.

In so concluding, we draw support from this court's recent decision in 
People v. Hasprey
, 308 Ill. App. 3d 841, 853, 721 N.E.2d 181, 190 (1999), in which we rejected an argument that reckless driving, also a Class A misdemeanor found in the Vehicle Code, was not a criminal statute for purposes of ordering resti

tution.  In 
Hasprey
, we noted several criminal statutes that are codified in places other than the Criminal Code and concluded as follows:  "We find it extremely unlikely that the legislature intended to exclude victims of offenses committed under these and countless other statutes from the benefit of restitution, and it would be absurd, at minimum, to hold as such."  
Hasprey
, 308 Ill. App. 3d at 853, 721 N.E.2d at 190.  Similarly here, it would be absurd to assume that the legislature intended probationers to be free to commit all sorts of crimes without affecting their probationary sentence simply because the statutes proscribing those crimes are codified somewhere other than in the Criminal Code.

Accordingly, we hold that section 5-6-3 of the Correc

tions Code (730 ILCS 5/5-6-3 (West 1998)), as well as defendant's probation order based on that statute, proscribes conduct that is defined as criminal, whether that statutory definition is located in the Vehicle Code or anywhere else in the statutes of Illinois.  The trial court, therefore, did not err by denying defendant's motion to dismiss the State's petition.

B. Indirect Criminal Contempt

Last, defendant argues that the trial court erred by convicting him of indirect criminal contempt and sentencing him to 120 days in jail.  Specifically, defendant claims the court erred by holding him in contempt when (a) the only document before the court (and then only a portion of it) that could be construed as a charging instrument was the concluding paragraph in the State's petition to revoke probation, and (b) the court did not admonish defendant pursuant to Rule 402(a) when he admitted to DWR.

As we explain below, we agree with both of defendant's claims.  Because the procedures used in this case exemplify continuing confusion regarding probation revocation and indirect criminal contempt proceedings, a discussion of each procedure follows.

1. 
Probation Revocation Proceedings

When a trial court imposes a probationary sentence, it orders a defendant to comply with certain conditions for a certain period of time in lieu of imprisoning him.  Because compliance with these conditions is essential to the success of a probationary sentence, probation is often described as an agree

ment between the defendant and the criminal justice system, with serious consequences to the defendant if he violates any of the conditions of his probation.  See 
People v. Bell
, 296 Ill. App. 3d 146, 149, 694 N.E.2d 673, 677 (1998).

The State seeks to have those consequences imposed when it files a petition alleging that the probationer violated a condition of probation.  This petition is usually entitled a "petition to revoke probation," but that title is a misnomer.  The State's petition would more accurately be entitled a "peti

tion for resentencing hearing" because the State is really seeking the following two-step procedure.  First, the State wants the opportunity to prove to the trial court that the probationer violated a condition of his probation.  Second, assuming the State succeeds in step one, the State wants a hearing at which the court will resentence the probationer for the underlying crime.  See 730 ILCS 5/5-6-4 (West 1998) (describing procedure).
  This process is often referred to as "probation revocation proceedings" even though it is possible (and perhaps even likely) that the court will continue the existing sentence of probation--

even if it finds that a violation occurred--and simply impose additional punitive conditions, such as time in jail up to six months, extra public service work, and the like.  730 ILCS 5/5-6-

3(e), (b)(9), 5-6-4(e) (West 1998).

The proceedings that occur after the State files its petition to revoke probation are considered noncriminal, and the probationer is entitled to fewer procedural rights than he would receive in a criminal trial.  
People v. Williams
, 303 Ill. App. 3d 264, 267, 707 N.E.2d 729, 731 (1999); 
Bell
, 296 Ill. App. 3d at 152, 694 N.E.2d at 679.  Accordingly, even though the State has the burden of proof, it need not prove that a defendant violated a condition of probation beyond a reasonable doubt.  Instead, the State need only prove its allegations by a prepon

derance of the evidence.  730 ILCS 5/5-6-4(c) (West 1998); 
Williams
, 303 Ill. App. 3d at 267, 707 N.E.2d at 731.  Further, even though the probationer has the rights of confrontation, cross-examination, and representation by counsel (730 ILCS 5/5-6-

4(c) (West 1998)), he may not have the right not to testify because the State may compel his testimony regarding the alleged violation of probation as long as the conduct that constitutes the violation is not itself criminal.  
Bell
, 296 Ill. App. 3d at 153, 694 N.E.2d at 679.

The procedural requirements that apply when a proba

tioner admits to a violation of probation are also less stringent than those that apply when a criminal defendant enters a guilty plea.  While due process requires that both a guilty plea and an admission to violating probation be voluntary (
People v. Butcher
, 288 Ill. App. 3d 120, 122, 679 N.E.2d 1260, 1261-62 (1997)), Supreme Court Rule 402(a) (177 Ill. 2d R. 402(a)), which requires that the trial court give certain admonitions to the criminal defendant who pleads guilty, does not apply to the probationer who admits violating a probationary condition.  
Cf
. 
Butcher
, 288 Ill. App. 3d at 120, 679 N.E.2d at 1261 (admonitions need not be as extensive as under Rule 402(a)).

The relaxed procedural safeguards involved in adjudi

cating whether a probationer violated a condition of probation do not offend due process because accusing someone of violating a condition of probation is not the equivalent of accusing him of committing a criminal act.  See 
Williams
, 303 Ill. App. 3d at 267, 707 N.E.2d at 731.  Once the trial court determines that a probationer has violated a condition of probation, it resentences him, but the new sentence is not a penalty for the conduct that violated a probation condition.  Instead, it is a new sentence for the probationer's original crime, although the court may--and should--consider the probationer's conduct while on probation in choosing a sentence. 
 
People v. Tufte
, 165 Ill. 2d 66, 74, 649 N.E.2d 374, 378 (1995), quoting 
People v. DeWitt
, 78 Ill. 2d 82, 86, 397 N.E.2d 1385, 1387 (1979); 
People v. McMann
, 305 Ill. App. 3d 410, 414-15, 712 N.E.2d 935, 938 (1999).  The court may impose any sentence available for the original conviction, including, if appropriate, simply continuing the existing probation.  See 730 ILCS 5/5-6-4(e) (West 1998).

2. 
Indirect Criminal Contempt

The purpose of criminal contempt proceedings is to punish the contemnor for conduct that offends the dignity of the court (
People v. Warren
, 173 Ill. 2d 348, 368-69, 671 N.E.2d 700, 710-11 (1996)), such as disobedience of a court order (
In re Marriage of Betts
, 200 Ill. App. 3d 26, 45, 558 N.E.2d 404, 417 (1990)).  Indirect criminal contempt refers to that subcategory of criminal contempt where the contemptuous conduct occurred outside the trial judge's presence.  
Betts
, 200 Ill. App. 3d at 47-48, 558 N.E.2d at 418
.

A person charged with indirect criminal contempt is entitled to the full panoply of constitutional protections that are afforded any other criminal defendant.  
Betts
, 200 Ill. App. 3d at 58, 558 N.E.2d at 425.  These include the privilege against self-incrimination, the presumption of innocence, the State's burden to prove the charge beyond a reasonable doubt, the right to counsel (even appointed counsel, if the accused is indigent), the right to a public trial, the right to confront witnesses and to compel testimony, the right to be present at trial, and the right to testify or to remain silent.  
Betts
, 200 Ill. App. 3d at 58, 558 N.E.2d at 425; see also 
Kaeding v. Collins
, 281 Ill. App. 3d 919, 925, 668 N.E.2d 572, 577-78 (1996) (following 
Betts
).

The alleged contemnor cannot assert these rights unless he receives proper notice of the nature of the charges against him.  Accordingly, any party wishing to initiate indirect criminal contempt proceedings must not only notify the alleged contemnor that sanctions are being sought, but that the proceed

ings will be criminal in nature.  
In re Marriage of Morse
, 240 Ill. App. 3d 296, 304, 607 N.E.2d 632, 638 (1993), citing 
In re Marriage of Alltop
, 203 Ill. App. 3d 606, 616, 561 N.E.2d 394, 400-01 (1990), and 
Betts
, 200 Ill. App. 3d at 58-59, 558 N.E.2d at 425
.  Thus, indirect criminal contempt proceedings cannot be initiated by a pleading captioned so as to imply that the pro

ceedings will not be criminal.  Instead, a party seeking a finding of indirect criminal contempt must say so explicitly by filing a pleading captioned "petition for adjudication of crimi

nal contempt."  
In re Marriage of Carpel
, 232 Ill. App. 3d 806, 823, 597 N.E.2d 847, 860 (1992) (holding that pleading captioned "petition for rule to show cause" implies that proceedings will be civil because a criminal defendant can never be compelled to "show cause").

As with any other criminal defendant, an alleged contemnor is also entitled to be informed not only of the nature of the proceedings, but also of the rights he would lose by admitting guilt.  Accordingly, this court has held that Supreme Court Rule 402(a), which describes the admonitions a trial court must provide a criminal defendant before accepting a guilty plea, applies as well to indirect criminal contempt proceedings when a defendant is offering to plead guilty.  
People v. Horton
, 250 Ill. App. 3d 944, 950-51, 620 N.E.2d 437, 441-42 (1993).

3. 
Violations of a Court Order 

Imposing a Probationary Sentence

When a probationer violates a condition of probation, he arguably commits an act of indirect criminal contempt and could be subject to both contempt sanctions and resentencing on the conviction for which he is serving probation.  In 
Bell
, 296 Ill. App. 3d at 150, 694 N.E.2d at 678, we acknowledged this possibility but concluded that a probationer accused of violating a condition of probation faced "no realistic threat" that the State would charge him with indirect criminal contempt for the same conduct constituting the alleged probation violation.  (Emphasis omitted.)  In light of the procedural burdens outlined above that are inherent in prosecuting an indirect criminal contempt charge, we find it bewildering that the State would ever seek indirect criminal contempt sanctions when the less burden

some procedures to resentence the probationer (pursuant to a petition to revoke his probation) provide a means to achieve the same result.

In this case, for example, the trial court sentenced defendant to 120 days in jail for contempt and discharged his probation.  The court could have--and should have--achieved the same result by simply resentencing defendant on his deceptive practices conviction to conditional discharge pursuant to section 5-6-1(b) of the Corrections Code (730 ILCS 5/5-6-1(b) (West Supp. 1997)).  As a condition of defendant's conditional discharge, the court could have required defendant to serve a period of up to six months in jail.  See 730 ILCS 5/5-6-3(e) (West 1998).

The sentence imposed on defendant for indirect criminal contempt was inappropriate.  As defendant points out, the State never filed any document charging him with contempt.  Instead, the State sought contempt sanctions as alternative relief in the concluding paragraph of its petition to revoke probation.  Just as is the case with a petition captioned "petition for rule to show cause," this method of charging indirect criminal contempt is improper because it purports to bring a criminal charge in a pleading that otherwise begins a noncriminal proceeding.  See 
Bell
, 296 Ill. App. 3d at 150, 694 N.E.2d at 677 ("A probationer cannot be held in contempt when the only charging instrument filed is a petition to revoke probation").

Moreover, the exchange that took place between defendant and the trial court when defendant admitted to DWR indicates that neither defendant nor the court understood defendant to be pleading guilty to an indirect criminal contempt charge.  Al

though the court later used defendant's admission as the basis for a finding of indirect criminal contempt, the court never provided defendant with the admonitions required by Rule 402(a) to be given to a defendant pleading guilty to a criminal charge.  Further, to the extent the court's comments could be considered admonitions, they incorrectly advised defendant regarding the State's burden of proof.

Thus, defendant's conviction for indirect criminal contempt must be reversed.  Because the record shows that the trial court's decision to discharge defendant's probation was ancillary to its decision to impose a sentence for contempt, we remand so that the court may resentence defendant.

III. CONCLUSION

For the reasons stated, we reverse defendant's sentence for indirect criminal contempt, affirm the trial court's finding that defendant violated a condition of his probation, and remand for further proceedings consistent with the views expressed herein.

Affirmed in part and reversed in part; cause remanded.

COOK, P.J., and GARMAN, J., concur.